ANDERSON, Appellant, v. RIPLEY COUNTY.

Division Two, March 23, 1904.

1. COUNTIES: Implied Contracts: Liability. Counties can not be made liable upon implied contracts for the erection of public buildings.

2. ———: ———: ———: Lack of Consideration. A county court, after having entered into a contract with plaintiff for the erection of a courthouse, and making provisions therein for alterations and extras, by a subsequent agreement, spread on the court record, agreed upon substantial alterations in the original plan, and added thereby nearly one-third to the cost originally agreed upon, but said nothing in such modified or supplemental agreement about the cost of the alterations and extras, and provided no method by which the additional cost was to be measured. Held, that as said supplemental agreement expressed no consideration or price to be paid for the work to be done, it

Anderson v. Ripley County.

could not be enforced by one who has performed the work, in view of the statute (sec. 6759, R. S. 1899) which requires contracts with the county, "including the consideration," to be in writing.

3. ————: **Public Building: Sec. 1800, R. S. 1899: Application.** Section 1800, Revised Statutes 1899, providing that "for work or labor done or material furnished in good faith, under contract with the county authorities, the claimant, if he shall have fulfilled his contract, shall be entitled to the just value of such work, though such authorities may not, in making such contract, have pursued the proceedings prescribed by law," has no application to contracts of the magnitude of contracts for the erection of public buildings, such as a courthouse and jail.

4. ————: ————: **Indebtedness.** The county court has no authority, without a direct vote of the people, to incur an indebtedness in excess of the revenue for the year for the erection of a courthouse. And where the people have authorized a debt for that purpose, the county court can not authorize a debt in excess of that amount and the current revenue for the year for the purpose of meeting the cost of alterations in the plans.

5. ————: ————: ————: **At Time Contract Was Made.** The fact that not more than half the revenue for the year had been expended at the time the contract for the alterations in the courthouse was made, has nothing to do with the validity of that contract. The statute (sec. 9283, R. S. 1899) provides that the revenue raised for current county expenses must first be applied to the ordinary expenses of the county as set out therein before any of it can be applied to paying the costs of erecting public buildings.

6. ————: ————: ————: **Ratification.** If a contract for a public building is void because it undertakes to create a debt upon the county, it can not be made valid by a subsequent ratification thereof by the county court.

7. ————: ————: ————: **Contractor's Knowledge.** Persons who deal with the county court as the agent of the county are presumed to know the limits of its authority, and the character of debts to which the revenue of any given year must be first applied, and, also, the provisions of the Constitution which prohibit the contracting of any debt in excess of the revenue of that year.

8. ————: ————: ————: **Performance: Hardship.** Nor does the fact that the work was done according to the void contract, and was worth the price agreed to be paid, and the building was accepted and has ever since been used by the county, and that to declare the contract void under the circumstances would

work a hardship upon the contractor, relieve against the inva-
lidity of a contract for the construction of a public building
which was void because it created a debt against the county
in excess of the ordinary current revenues of the county for the
year.

Appeal from Ripley Circuit Court.—*Hon. J. L. Fort,*
Judge.

AFFIRMED.

*J. C. Sheppard* for appellant.

(1)   The contract for the extra work sued for is
not void, but especially provided for in the "fourth"
clause of the original contract; as this work merely con-
sisted of alterations from the original plans and speci-
fications.   This suit is for work and labor done and
materials furnished in good faith by plaintiff, as is ad-
mitted.   This being true it falls under section 1800,
Revised Statutes 1899, and the contract need not have
been executed with all the formalities required by sec-
tion 6759, Revised Statutes 1899.   Bryson v. Johnson
County, 100 Mo. 76.   The case of Woolfolk v. Randolph
County, 83 Mo. 501, is distinguished and virtually over-
ruled in case of Bryson v. Johnson County, supra; and
the cases of  Crutchfield v. City of Warrensburg, 30
Mo. App. 540; Inhabitants of Schell City v. Rumsey,
39 Mo. App. 364, are not in point, as they were not for
work and labor or materials furnished.   (2)   The next .
contention of defendant is that at the time this work
was contracted for, May 5, 1899, it created an indebted-
ness in excess of the revenue provided for that year,
and hence the contract was void as being in violation
of article 10, section 12 of the Contitution of Missouri.
The evidence shows the revenue provided for that year
to have been $15,223.10, and the expenditures up to and
including May 5, 1899, and including the amount herein
sued for, to have been $9,553.76; thus demonstrating
that this contention is not true by $5,669.34.   The court

permitted defendant to show the entire expenditures of the county for the year 1899, over the objection of plaintiff, which amounted to $20,000.   Of course, it will be conceded that the debts created in excess of the revenue for any one year are void, but it is only such liabilities as are in excess of the revenues provided for that year that are void.   Bank v. Douglas County, 146 Mo. 56; Andrew County v. Schell, 135 Mo. 31; Wilson v. Knox County, 132 Mo. 398; Railroad v. Thornton, 152 Mo. 570; State ex rel. v. Johnson, 162 Mo. 621.   (3)   It can not be contended that the county court could not make this contract for the reason that the method pointed out for erecting a court house and jail is by a vote of the people, because the county court may, under section 6723, Revised Statutes 1899, erect a court house, provided it has the means, without any vote whatever. State ex rel. v. Howell County, 58 Mo. 583.   If it has the authority to build an entire new court house without any vote, surely it would have authority to expend a small sum in the necessary widening of the foundation. The whole is greater than any of its parts.   Jail Co. v. Kearney, 78 Fed. 171.

*Thomas F. Lane* for respondent.

(1)   The attempted new contract for extra work on the court house is void because the "fourth" paragraph of the original contract relating to changes and alterations contains this language: "But such alterations or additions before being made shall be stated in writing to the said party of the second part by the said superintendent with his appraisement thereof indorsed thereon, which said appraisement shall be fair and reasonable."   The alterations and extra work for which plaintiff sues having been made without this condition precedent having been complied with he can not recover on the contract.   Beach on Modern Law of Contracts

(1897 Ed.), secs. 88, 100; Roy v. Boteler, 40 Mo. App. 213; Neenan v. Donoghue, 50 Mo. 493; Yeats v. Balentine, 56 Mo. 530; Dinsmore v. Livingston County, 60 Mo. 241; sec. 6759, R. S. 1899; Wolcott v. Lawrence Co., 26 Mo. 272; Crutchfield v. City of Warrensburg, 30 Mo. App. 456; Steins v. Franklin Co., 48 Mo. 177; Saline Co. v. Wilson, 61 Mo. 239; Dixon v. Livingston Co., 70 Mo. 240; Taylor v. School District No. 3, 60 Mo. App. 373; Hisey v. City of Charleston, 62 Mo. App. 384; Woolfolk v. Randolph Co., 83 Mo. 501; Sheely v. Wiggs, 32 Mo. 398; State v. Clark County Court, 41 Mo. 44; Rippy v. Jefferson Co., 47 Mo. 66; Sears v. Stone Co., 105 Mo. 236; Vitt v. Owens, 42 Mo. 512; State ex rel. v. Harris, 96 Mo. 37; sec. 48, art. 4, Constitution. (2) Plaintiff can not recover because the debt sued for was in excess of the revenues and income of defendant county provided for the year 1899. Art. 10, sec. 12, Constitution; Barnard & Co. v. Knox Co., 105 Mo. 382; Book v. Earl, 87 Mo. 246; sec. 6771, R. S. 1899; State ex rel. v. Johnson, 162 Mo. 621; Andrew County v. Schell, 135 Mo. 31; Wilson v. Knox Co., 132 Mo. 398; Railroad v. Thornton, 152 Mo. 570; Bank v. Douglas Co., 146 Mo. 42; State ex rel. v. Payne, 157 Mo. 663. The pretended contract relied on by plaintiff having been consummated at the May term, 1899, the county court was then for the first time required under the law to make the estimate for the current expenses, for that year, and apportion the revenue to the various funds as required by the statute. State ex rel. v. Allison, 155 Mo. 333. (3) Plaintiff raises the point for the first time in his brief, that this is a suit for work and labor done and materials furnished, and says that, therefore, it was not necessary for the contract to have been executed with all the formalities required by law. Plaintiff in his replication set up and pleaded a written contract, and he is therefore bound to that theory of the case. He can not rely on a different case than that made by the pleadings and evidence. Plaintiff makes

the point at the outset in his brief that the "contract for the extra work sued for is not void, but especially provided for in the 'fourth' clause of the original contract;" the two theories are antagonistic, and parties on appeal can not assume positions different from those taken in the trial court. Minton v. Steele, 125 Mo. 181; Maze v. Baird, 89 Mo. App. 348. No recovery can be had on *quantum meruit* for erecting a county court house for the county. The recovery, if had at all, must be upon the special contract entered into under the provisions of the act provided for erecting county buildings. Wolcott v. Lawrence Co., 26 Mo. 272; Crutchfield v. City of Warrensburg, 30 Mo. App. 456; Steins v. Franklin Co., 61 Mo. 239; Taylor v. School District No. 3, 60 Mo. App. 373; Hisey v. City of Charleston, 62 Mo. App. 384; Book v. Earl, 87 Mo. 246. This contract sued on by plaintiff was void in its inception because it was in excess of the money raised by vote of the people to do this work; because it was not in writing and the consideration stipulated and expressed, and because it created or attempted to create a debt in excess of the current revenues provided for that year; hence, the law can not raise an implied promise on the part of the county to pay for the work. Wolcott v. Lawrence Co., supra; Inhabitants of Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264; Crutchfield v. City of Warrensburg, 30 Mo. App. 456. Plaintiff must fail to recover in this case on the theory of *quantum meruit* because there is not one scintilla of evidence in the record as to the value of the work, or whether the price charged by plaintiff was reasonable or exorbitant, and no evidence that this extra work was necessary. Eyerman v. Mt. Sinai Assn., 61 Mo. 489; Halpin Mfg. Co. v. School Dist., 54 Mo. App. 371. Plaintiff must recover, if at all, on the contract.

FOX, J.—"This action arose out of an attempted modification of an original contract between appellant

and respondent, to build a court house and jail for Ripley county. Said original contract was dated October 10, 1898. The modification, or new contract between appellant and respondent, was dated May 5, 1899. Ripley county had not funds to erect the necessary and desired buildings provided for in the contract, and a proposition to bond the county in the sum of twenty thousand dollars to build said court house and jail was submitted to the voters thereof on the 30th day of July, 1898, and was duly carried; the bonds were sold, and the original contract between appellant and respondent county resulted as first above stated. The contract price of the court house and jail which were included in one transaction was $18,060. Prior to the acceptance of the buildings and prior to the order of the county court making an entry of record agreeing upon the value of extra work claimed by appellant, the county court had paid appellant $795 on such extra work, and this amount, together with the amount afterward found and agreed upon by the county court to be due for extra work, made a total of $4,500 in excess of the contract, and $2,256.50 in excess of the amount authorized by the people at the special election held for that purpose. The total revenues of Ripley county levied for the year 1899, from all sources, was $15,-223.08. The total amount of warrants drawn to pay the current and ordinary running expenses for the year 1899, was $20,703.11. No warrant has ever been issued for the amount sued on in this case.''

The fourth paragraph of the contract entered into by appellant and respondent, for the building of the court house, provides as follows:

''The said party of the first part may make all alterations by changing, omitting from or adding to the work it shall deem proper, and the superintendent shall advise, without in any manner impairing the validity and virtue hereof; and in such case the said superinten-

dent shall value and apraise such alterations and add to and deduct from the amount herein agreed to be paid to the party of the second part, the excess or deficiency occasioned by such alterations or additions, as the case may be, but such alterations or additions before being made shall be stated in writing to the said party of the second part by the said superintendent with his appraisement thereof indorsed thereon, which said appraisement shall be binding on all parties hereto, which said appraisement shall be fair and reasonable."

On May 5, 1899, the following contract for extra work was made by the county court of Ripley county and the appellant:

"May Regular Term, 1899, and the 6th day of May, 1899:

"Now at this time the court enters into contract with J. M. Anderson to do certain extra work on court house and jail, which said contract is in words and figures as follows:

"Doniphan, Mo., May 5, 1899.

"It is hereby agreed by and between the county court of Ripley county, as party of the first part, and John M. Anderson, of Emporia, Kansas, as party of the second part, that the following changes have been agreed upon—that the foundation wall of jail below contract and excavation of the trenches is an extra, and also all the stone walls within and outside of foundation walls of court house to be an extra below the contract, also the excavation and trenches for said walls and the filling in of the jail under concrete and all the stone walls of court house, both inside and outside, to be made two feet thick instead of eighteen inches thick and all inside and outside walls below ground to be laid in cement mortar and all the above mentioned changes is hereby recommended by me.

"Yours truly, WM. F. SCHRAGE,

"Architect and Superintendent Court House and Jail, Doniphan, Ripley County, Mo."

On the 15th of December, 1899, the county court of said county made the following order:

"Now at this time the court accepts the new court house built by J. M. Anderson for Ripley county and on examination the court finds the charges for extra work and material furnished on said court house by the said J. M. Anderson to be forty-five hundred and five dollars, and that seven hundred and ninety-nine dollars and fifty cents have been paid on such extras, and that the original contract has been paid in full, and that a balance of thirty-seven hundred and five dollars and fifty cents yet remains to the said J. M. Anderson for said extra work and material. It is further ordered by the court that the bond of said J. M. Anderson given Ripley county for the faithful performance of the contract to build said court house be returned to him."

At the close of all the evidence, plaintiff requested the court to give the following declarations of law:

"It is admitted in this case that the people of Ripley county in the year 1898 voted on the proposition to erect in said county a court house and jail, and that said proposition was duly carried at an election duly held for that purpose, and an indebtedness was, by said election, authorized to the amount of twenty thousand dollars for that purpose, and that the plaintiff contracted with the county court of said county to erect said court house and jail for the sum of eighteen thousand and sixty dollars, and that the amount sued for in this case is for a part of the work done on said court house, and the court sitting as a jury, declares the law to be, that if it finds and believes from the evidence in this case that said work herein sued for was performed under a contract with said county court, the said work received and accepted by said court, and the amount thereof adjusted and agreed upon between the said court and the plaintiff, and that the amount agreed upon was the balance due from said county to the plaintiff, which said amount was $3,705.50, and at the time said contract for

the work sued for was made the county court of said county had not expended, including the amount herein sued for, the revenues of said county provided for the year 1899 to an amount in excess of the general county revenue provided for said year, including the revenues on hand from any previous years not then appropriated for any other purpose, and also that said court at that time, the time of entering into said contract for the work herein sued for, had not incurred liabilities in excess of the revenues provided for the erection of the court house and jail, then the finding should be for the plaintiff.''

The court refused this request, and upon the submission of the cause, rendered judgment for defendant. From this judgment plaintiff prosecutes his appeal, and the case is now before this court for review.

## OPINION.

This appeal presents two vital propositions for our consideration:

First. Does the contract, disclosed by the record, entitle plaintiff to recover?

Second. Is the debt, created by the contract, in excess of the revenue provided for the year in which the debt was contracted?

It will be observed that at an election in Ripley county, Missouri, bonds were authorized to be issued to the extent of $20,000, for the purpose of building a court house and jail.

There was a contract entered into between plaintiff and the county, for the erection of these buildings. The contract price agreed upon was $18,060. This original contract was dated October 10, 1898. On May 6th, the following agreement was made:

''May Regular Term, 1899, and the 6th day of May, 1899:

''Now at this time the court enters into contract

with J. M. Anderson to do certain extra work on the court house and jail, which said contract is in words and figures as follows:

"Doniphan, Mo., May 5, 1899.

"It is hereby agreed by and between the county court of Ripley county, as party of the first part, and John M. Anderson, of Emporia, Kansas, as party of the second part, that the following changes have been agreed upon: That the foundation wall of jail below contract and excavation of the trenches is an extra, also all stone walls within and outside of foundation walls of court house to be an extra below the contract, also the excavation of the trenches for said walls and court house, both inside and outside, to be made two feet thick instead of eighteen inches thick and all inside and outside walls below ground to be laid in cement mortar, and all the above changes is hereby recommended by me.

"Yours truly, Wm. F. Schrage,

"Architect and Superintendent Court House and Jail, Doniphan, Ripley county, Mo."

It is upon this last agreement that plaintiff must rest for authority for doing the work, and for a recovery in this cause.

There is no dispute about the original contract; both parties conceded that it was fully consummated and in proper form.

It will be noted that paragraph four, in the original contract, expressly provides the manner in which changes should be made in the plan of the work, as contained in the original contract. This paragraph was as follows:

"The said party of the first part may make all alterations by changing, omitting from or adding to the work it shall deem proper, and the superintendent shall advise, without in any manner impairing the validity and virtue hereof; and in such case the said superin-

tendent shall value and appraise such alterations and add to and deduct from the amount herein agreed to be paid to the party of the second part, the excess or deficiency occasioned by such alterations, as the case may be, but such alterations or additions before being made shall be stated in writing to the said party of the second part by the said superintendent with his appraisement thereof indorsed thereon, which said appraisement shall be binding on all parties hereto, which said appraisement shall be fair and reasonable.''

Section 6759, Revised Statutes 1899, provides, in respect to contracts by counties: ''No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.''

It is apparent from an examination of the agreement of May 6, 1899, as herein set forth, that it did not comply with either the agreement in the original contract, as contained in paragraph 4, or the provisions of section 6759, supra.

It is unnecessary in this cause to express an opinion upon the proposition that the changes of the original plan of construction could only be made by a compliance with the agreement in paragraph 4 of the original contract; but we have no hesitancy in holding that the contract for the additional work, or, as it is denominated, extras, must comply with the provisions of section 6759, supra. It may be termed extras; but it will be noted, that it involved an expenditure by the court of nearly one-third of the amount, as fixed by the original contract for the construction of the entire building.

This additional extra work was no slight or trivial expenditure for repairs of a public building already constructed; but it was an essential and important part of the plan of construction, and it was just as important that the contract for that work should substantially comply with the statute, as it was for the original contract to do so.

It will be observed that there is an entire absence of any expression, in the agreement of May 6, 1899, as to the consideration for this work; it is simply an agreement as to certain changes or additions, recommended by the superintendent, and the liability of the county for the value of the work is made to rest upon the implied promise to pay for its reasonable value. If the county court can make this sort of an agreement, and thereby increase by nearly one-third the cost of the building of the court house, it would logically follow that, in pursuance of the exercise of the same power, it could agree to changes as to two-thirds or three-fourths of the work, without expressing any consideration, and, by implication, render the county liable for the value of such work. This can not be done. We take it, that it is well settled that counties, in the erection of public buildings, can not be made liable upon an implied promise. In Wolcott v. Lawrence County, 26 Mo. 272, the rule on this subject was very aptly announced, and has never been departed from. It was said in that case:

"In respect to many things that concern the county, it has a large discretion; but in reference to the erection of county buildings its authority is defined by a public law, and is special and limited. It can not act like general agents, whose acts may bind their principals if performed within the general scope of their agency, though in violation of private instructions unknown to those who deal with them; for it has no power over the subject except such as is given by law; and every person who deals with the county court, acting in behalf of the county, is bound to know the law that con-

-fers the authority. There is no difference in this re-
spect between public and private agents; and if the
·county court exceeds its special and limited authority,
conferred by the statute, in a material matter, the
·county will not be bound. The act concerning county
buildings regulates the whole subject. The manifest
policy of the act was to prevent the embarrassment of
·counties by the erection of buildings more costly than
their necessities require, and the incurring of liabilities
beyond their ability to pay. The first step to be taken
by the county court, before proceeding to the erection
·of a county building, is to ascertain that sufficient funds
.are in the treasury unappropriated, or that the circum-
stances of the county otherwise permit; and then to
make an order appropriating a certain sum for the pur-
pose, which shall cover the maximum cost; and the con-
tract price can not exceed the amount appropriated.
This provision was evidently suggested by the univer-
sal experience that the cost of public works generally
·exceeds the estimate; and there would be no safeguards
for the funds or credit of a county if the public build-
ings were let out to be built by contract and the price
left to be determined according to the value of the work
after its completion. In our opinion the county is not
liable upon an implied promise.''

The substantial provisions of section 6759 were
first enacted in 1874, and PHILLIPS, J., in Crutchfield v.
Warrensburg, 30 Mo. App. l. c. 402, very correctly and
·clearly announces the purpose of that section. He
said:

''The history of the times which evoked this legis-
lation can leave no doubt in the mind of one familiar
with it, that the controlling purpose inspiring the Leg-
islature was to cut off absolutely, among other things,
just such claims as the one under consideration. To
subject the city to liability for such services, the statute
declares affirmatively that the contract must be made
and executed in writing prior to the service performed,

for it must express the consideration on its face, to be performed or executed subsequent to the making of the contract. In Woolfolk v. Randolph County, 83 Mo. 506, the court says: 'The manifest purpose of the requirement is, that the terms of the contract shall, in no essential particular, be left in doubt, or to be determined at some future time, but shall be fixed when the contract is entered into. This was one of the precautions taken to prevent extravagant demands, and to restrain officials from heedless and inconsiderate engagements. If a person can, without such contract, in the first instance, go on and bind the city as on an implied contract for the value of his services, it would defeat the very object and design of the Legislature in enacting said statute.' "

It is earnestly insisted by appellant that the extra work was done, and material furnished, and that plaintiff was entitled to recover under the provisions of section 1800, Revised Statutes 1899. This section provides: "If a claim against a county be for work and labor done, or material furnished in good faith by the claimant, under contract with the county authorities, or with any agent of the county lawfully authorized, the claimant, if he shall have fulfilled his contract, shall be entitled to recover the just value of such work, labor and material, though such authorities or agent may not, in making such contract, have pursued the form of proceedings prescribed by law."

We are unwilling to sanction the insistence of appellant, as to the application of this section. The contract for this additional or extra work, beyond dispute, is a part of the contract for the erection of the public building of Ripley county; if the county court can refuse to express any consideration for that work, or provide any method by which the consideration is to be measured, then upon the same principle and in accordance with the same reasons, the entire building may be constructed without any contract as to the price, and

the county would, by implication, be liable for the labor performed and material furnished.   Such a precedent would not be in harmony with either the letter or spirit of the provisions of our statute, governing the erection of public buildings, and would absolutely destroy all the safeguards surrounding the acts of the public agents of the counties, which this court, for so many years, has so uniformly maintained.   Section 1800, supra, has no application to contracts "of the magnitude and of the peculiar and distinct character" for the erection of public buildings.   [Wolcott v. Lawrence County, supra; Woolfolk v. Randolph County, supra.]

Plaintiff was not entitled to recover in this action, on the ground that the attempted modification of the contract was an effort to incur an indebtedness beyond that as authorized by the vote of the people.   It must be kept in view that the purpose of the election was to obtain authority to incur an indebtedness for the specific purpose of building a court house and jail, and the terms of the statute indicate that it is the only method of proceeding to incur an indebtedness in excess of the total income and revenue of the county for any one year. Section 5172, Revised Statutes 1899, provides: "Whenever it shall become necessary for any county in this State to incur any indebtedness, for the purpose of building a court house or jail, in excess of the total income and revenue of such county provided for any one year, as limited by law, it shall be lawful for any number not less than one hundred of the qualified voters of such county, who are taxpayers therein, to present to the county court of such county a petition and application, in writing, setting forth the object and purposes for which the indebtedness is desired to be created, and whether it is desired to issue bonds for such indebtedness, or to pay the same by the direct levy of taxes for that purpose during a given number of years, stated in

such petition, and praying that an election be held to authorize the incurring of such indebtedness and the levying of such taxes; upon the presentation of such petition it shall be the duty of the county court of such county, at a regular term thereof, to order a special election for the purpose set forth in such petition, and to make an entry of such order on the records of the court.''

Section 5174, Revised Statutes 1899, provides for the form of the ballot, and it clearly indicates that the ballot must be cast in favor of or against the incurring of the indebtedness, for the particular purpose of building a court house and jail.

This election proceeded on the theory that an indebtedness had to be incurred for the purpose of erecting these buildings, and the method pointed out by the statute had to be pursued, and the county court had no authority to incur an indebtedness in excess of the revenue for that year, under the circumstances, otherwise than by the authority obtained by the election. It is true, as argued by counsel for appellant, if the county has the funds, it can erect the buildings without an election. That is not this case. It is apparent from the record before us that defendant did not have the funds, hence the necessity of resorting to the other method of obtaining the assent of the people, to incur an indebtedness in excess of the revenue of the county, sufficient to accomplish the purpose. The indebtedness authorized to be incurred for the purpose of building the court house and jail, was $20,000, and the county court was powerless to increase it by any contract it sought to make.

The proof disclosed by the record before us shows that the total revenue of the county, for the year 1899, was $15,223.10, and that the ordinary and current expenditures for that year amounted to $20,000. It is manifestly apparent from this record, that the county court undertook to increase the amount of

the indebtedness, in excess of the revenue for that year, which had been duly authorized by the election, to the extent at least of twenty-three hundred dollars. This they had no authority to do. It is argued by appellant that at the time of the contracting of this debt, May 5, 1899, the total revenue of the county for the year 1899, was $15,223.10, and the expenditures, up to and including May 5, 1899, was $9,553.76. Hence this contract was valid and there was ample revenue to pay it. If appellant's argument be sound, that the ordinary current expenses of the county are only to be considered at the date of contracting for the additional and extra work on the public buildings, then there was no need of an election to build a new court house costing $15,000; it would only be necessary to contract the debt for the erection of it at the commencement of the year, before any of the ordinary current expenses had accrued, and the contract would be valid.

The fundamental error of this contention is that learned counsel for appellant loses sight of the purposes for which the taxes for the year 1899 were levied by the county court. Section 9273, Revised Statutes 1899, provides for the assessment and levy of taxes; it says: "The following named taxes shall hereafter be assessed, levied and collected in the several counties in this State, and only in the manner, and not to exceed the rates prescribed by the Constitution and laws of this State, viz.: The state tax and the tax necessary to pay the funded or bonded debt of the State, the funded or bonded debt of the county, the tax for current county expenditures, the taxes certified as necessary by cities, incorporated towns and villages, and for schools."

It will be observed that the levy of the taxes, for county purposes, is limited to the payment of interest on funded or bonded debt of the county, and current county expenditures.

The character of county expenditures to which the revenue of the county must first be applied, is indicated

by section 9283, Revised Statutes 1899, which provides:

"The county courts of the several counties of this State are hereby authorized and empowered, at the first regular term of such court after the taking effect of this chapter, and at the May term every year thereafter, to appropriate, apportion and subdivide all the revenues collected, and to be collected, and moneys received and to be received, in the various counties in the State, for county purposes, in the following order:

"I. A sum sufficient for the payment of all the necessary expenses that may be incurred for the care of paupers and insane persons of such county.

"II. A sum sufficient for the payment of all necessary expenses for the building of bridges and repairing of roads, including the pay of road overseers of such county.

"III. A sum sufficient for the payment of the salary of all county officers, where the same is by law made payable out of the ordinary revenues of the county.

"IV. A sum sufficient for the payment of the fees of grand and petit jurors, judges and clerks of elections, and fees of witnesses for the grand jury of the county.

"V. A sum sufficient for the payment of the other ordinary current expenses of the county, not hereinbefore specially provided for, which shall be known and designated as the contingent fund of such county; which last sum shall in no case exceed one-fifth of the total revenue of such county for county purposes for any one year."

The law contemplates the payment of the ordinary current expenses, out of the revenue of the county, before any of it can be applied to debts not of that character.

Parties who deal with the county court as the agent

of the county, are presumed to know the limits of its authority, and to know the character of debts to which the revenue of any given year must be first applied, and the provision of the Constitution which prohibits the contracting of any debts in excess of the revenue for that year. The party who becomes the creditor of a county, at any time during the year, his debt not falling within the class of ordinary current expenses, must know that the debts of the county for the usual, ordinary current expenses, must first be paid; that the taxes were levied and assessed for that purpose he does so at his peril and if the current expenditures consume all the county revenue, then, in that case, his debt is in excess of it and void. In Book v. Earl, 87 Mo. 246, the proposition now being discussed was fully reviewed by this court. It will be noted in that case, that the debt was, as in the case at bar, contracted in May, yet the entire current expenses of the county for the whole year were taken into consideration in determining the question as to whether the debt in dispute was in excess of the revenue for that year. NORTON, J., speaking for the court in that case, after quoting section 12 of article 10 of the Constitution, and section 6818 of the Revised Statutes of 1879, which is substantially section 9283 of the present revision, said:

"The evident purpose of the framers of the Constitution and the people who adopted it, was to abolish, in the administration of county and municipal government, the credit system and establish the cash system by limiting the amount of tax which might be imposed by a county for county purposes, and limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury for that year. Section 12, supra, is clear and explicit on this point. Under this section the county court might anticipate the revenue collected, and to be collected, for any given year, and contract debts for ordinary current

expenses, which would be binding on the county to the extent of the revenue provided for that year, but not in excess of it."

In further treating of section 6818 (now section 9283), it was said:

"That section plainly designated the county purposes to which the revenue should be applied. . . . Keeping in view the fact that the county court in levying a tax for county purposes for the year 1881 had gone to the extreme verge of the limit allowed by section eleven, article ten, of the Constitution, and the fact that the revenue resulting from all sources of taxation for that year amounted only to $28,000; keeping in view these facts and the further fact that by section 6798, Revised Statutes 1879, the county court was authorized to levy such tax for 'current county expenditures,' and the further fact that the exraordinary expenditure of $9,600 contemplated by the contracts with Bennett were not for ordinary repairs but for remodeling and building three new additions to the court house does not come within the meaning of current county expenditures, as shown by section 6818, supra, we must hold that the order of May 2, 1881, was unauthorized; and keeping in view the fact that the debt of $9,600 sought to be contracted was in excess of the revenue provided for the year 1881, we must hold, under the provisions of the Constitution here referred to, it invalid and also the warrants issued to Bennett under the contract."

We see no reason to depart from the conclusion reached in that case. It is decisive of the two propositions involved in the case before us, that is, that the debt attempted to be contracted for the additional or extra work, in the erection of the court house and jail, was not ordinary current expenses of the county, and was in excess of its revenue for the year 1899, and for those reasons was invalid.

It follows, if the contract of indebtedness was void, that the attempted ratification of it by the order of the county court of December 13, 1899, could not give it any vitality or force.

If it be said in this case, as was said in the Book-Earl case, that the conclusion reached operates a great hardship upon the plaintiff, we are unable to add anything to what was said by the learned judge in response to that suggestion. He said:

"It is said that this ruling will work a great hardship, inasmuch as the work contracted for was done according to the contract, was worth the price agreed to be paid, and was accepted and has ever since been used by the county. This may be so, but we are powerless to relieve against it. It was said in Wolcott v. Lawrence County, 26 Mo. 272, when a like case of hardship was before the court: 'That the law is a warrant of attorney to the county court. All its provisions· are plain, and the contractor, before he undertakes the work, as he deals with an agent whose powers and duties are prescribed, ought to see that the agent is pursuing his authority; for the agent can not bind the county, except as it is commanded or permitted to do. . . . If any effect is to be given to the law at all, its plain directions must be followed, and to allow a manifest departure from them, would not only be a violation of an established rule that governs the relations of principal and agent, but would remove all of the restrictions which the law has imposed upon county courts in contracting debts to be paid by the county.' "

Entertaining the views as herein expressed, the judgment of the trial court should be affirmed, and it is so ordered. All concur.