THE STATE ex rel. WILLIAM J. GAVIGAN, Appellant, v. BERNARD DIERKES, Auditor of St. Louis.

Division One, November 25, 1908.

1. **LEGISLATIVE POWER: One Branch.** One house of a municipal assembly can make an investigation into the subject of municipal taxation, and has the right to designate a committee for that purpose. But one house cannot by resolution create a position and attach thereto a salary to be paid out of the city funds. It cannot create a committee and in the same resolution provide for a clerk, designate his compensation, and authorize the committee to employ him.

2. ————: ————: **Contract.** One house of a municipal assembly cannot by resolution make a valid contract. The creation of salaried positions, as well as the expenditure of public funds, is placed in the hands of the whole legislative department, to which there is coupled the restraining veto power of the mayor.

3 ————: ————: ————: **Employment of Private Persons: No Ordinance.** Section 6759, Revised Statutes 1899, providing that "no city shall make any contract, unless the same . . . be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto," and section 7, article 16, St. Louis charter, providing that "all contracts relating to city affairs shall be in writing, signed and executed in the name of the city, by the officer authorized to make the same, after due notice; and in cases not otherwise directed by law or ordinance, such contracts shall be made and entered into by the Comptroller, and in no case by the Assembly or any committee thereof," are a complete bar to the power

State ex rel. v. Dierkes.

of one house by mere resolution, appointing a committee of investigation, to provide therein for a clerk to be paid $200 per month, and to be appointed by the committee. Since such clerk is a private person, the only method to create a valid contract binding the city to pay for his services is by an ordinance providing for such character of work, to be entered into in the method prescribed by the statute and charter.

4. ————: ————: ————: ————: Implied Power. Even though in its power to appoint a committee to make an investigation there was an implied power authorizing the one house to make a contract with the committee's clerk for his services to the city, that power must be exercised in pursuance to the terms of the statute and charter, and unless the contract is so made the city is not bound to pay the clerk.

5. APPROPRIATIONS: Specific: "Other Expenses." An appropriation ordinance, to authorize the city auditor to pay a warrant for services performed for the city, must be specific and definite as to the officer to be paid or the work to be paid for. An appropriation for "other expenses of the House of Delegates" is not sufficiently specific to authorize the auditor to draw a warrant for a clerk of a committee of investigation appointed by the House. The words, "other expenses," under the rule of *ejusdem generis*, mean expenses of the character mentioned in the clause with which they are connected, namely, "publishing, printing, stationery, office expenses, furniture, rent of telephone and other expenses of the House of Delegates."

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Rassieur, Schnurmacher & Rassieur* for appellant.

(1) The House of Delegates had the power, by means of a committee, to make the investigation which resulted in the employment of relator. Charter, art. 3, sec. 31; In re Dunn, 9 Mo. App. 255; sec. 1314; Rev. Mun. Code City of St. Louis, 1901. (2) (a) The express grant of power thus conferred upon the House by the charter, carries with it, by necessary implication, the right to employ all such means as may be requisite or needful to make the grant or power effectual, and to carry it into execution. Groner v. City Council of Portsmouth, 77 Va. 488; City of Richmond

v. Dickinson, 155 Ind. 345; Ellis v. Washoe Co., 7 Nev. 291; Smith v. Sacramento, 13 Cal. 531; Egan v. Chicago, 5 Ill. App. 70; City of Memphis v. Adams, 56 Tenn. 518; Sargent v. Inhabitants of Bristol, 2 Hask. 112; Burton v. Norwich, 34 Vt. 345; Stewart v. Council Bluffs, 58 Ia. 642; Rockebrandt v. City of Madison, 9 Ind. App. 227. "Where an express power is given, all the power necessary to carry it into effect is implied. That which is implied is as much a part of the statute as if written therein." State ex rel. v. Railroad, 164 Mo. 208. (b) No officer of the city was required, in the discharge of his official duties, to render the committee the services it procured from relator. The committee required these services, and, therefore, had the power to obtain them from relator. (3) The House approved relator's bill, and directed the clerk to draw a voucher therefor on the Auditor. The funds in the hands of the Auditor were applicable to the payment of relator's demand. The appropriation ordinance set aside funds "to cover expenditures of the current fiscal year, including bills unpaid at the beginning of the fiscal year." Expenditures is here used in the sense of disbursements or outlays during the fiscal year, and not merely in the sense of expenses incurred during the fiscal year. Webster's Dictionary, "Expenditures;" Worcester's Dictionary, "Expenditures;" Anderson's Dictionary of Law, "Expenditures;" 12 Am. and Eng. Ency. Law, 394; Sullivan v. Min. Co., 39 Cal. 459. (4) The charter provision limiting the annual salary of clerks to $1,800 has no application to relator. It applies only to the regular staff of clerks in the various departments of the city government whose duties are more or less permanent and who perform services which are required month in and month out, and not to casual employment like relator's.

*Charles W. Bates* and *Benjamin H. Charles* for respondent.

(1) The alleged contract of employment of the relator as a clerk was "without express authority of law," and was therefore void. Constitution, art. 4, sec. 48. (a) The House of Delegates has no powers except such as are specially conferred upon it. The power to contract is not conferred upon it by the charter; and this attempted contract of employment is therefore in conflict with the provision of the Constitution above cited. (b) The constitutional provision is violated because the alleged contract of employment was not in writing. Charter, art. 16, sec. 7; R. S. 1899, sec. 6759; Woolfolk v. Randolph County, 83 Mo. 501; Crutchfield v. Warrensburg, 30 Mo. App. 456; Schell City v. Mfg. Co., 39 Mo. App. 264; Taylor v. School District, 60 Mo. App. 372. (c) The Constitution is violated by the alleged contract for the reason that it could be made and entered into "in no case by the Assembly or any committee thereof." Charter, art. 16, sec. 7. (d) The Constitution is violated because the House of Delegates attempted to pay the relator a greater compensation than was permitted by the charter, art. 16, sec. 18. (2) The Auditor is expressly prohibited from allowing this claim. Charter, art. 4, sec. 21; art. 5, secs. 10, 11, 14; McQuillin's Note, and authorities there cited, on Power and Duty of Auditor in Auditing Claims—Municipal Code of St. Louis, p. 236; Municipal Code, sec. 2282; State ex rel. v. Brown, 172 Mo. 382. Mandamus will not lie to compel the auditing of a claim for which there is no appropriation. State ex rel. v. Brown, 141 Mo. 28; State ex rel. v. Holliday, 64 Mo. 526, 65 Mo. 76.

GRAVES, J.—On October 30, 1903, the House of Delegates of the city of St. Louis passed a resolution authorizing the appointment of a special committee

of five from that body for the purpose of investigating the returns of property as made for taxation, and by this resolution the said committee was authorized to appoint a clerk at a salary of not more than $200 per month and one or more attorneys at a salary of not more than $350 per month each. This committee was appointed November 6, 1903, and the relator was named as its clerk, and under the evidence performed the work of a clerk for the committee. On April 8, 1904, the following resolution was passed by the House of Delegates:

"Your Special Committee on Investigation of tax returns, heretofore appointed by this House on October 30, 1903, begs leave to report that in accordance with authority conferred on said committee, it did, on the 6th day of November, 1903, employ Peter T. Barrett as its attorney and counselor at an agreed compensation of $350, and Wm. J. Gavigan as its clerk at an agreed compensation of $200 per month, and on February 15, 1904, employed William F. Ryan as an additional attorney at an agreed compensation of $350 per month, and because of the expenses incurred thereby by your committee, we ask that your honorable House pass the following resolution:

"*Resolved,* That the Committee on the 'Investigation of Taxes' be and is hereby authorized to expend the sum of $3,615 out of the fund Municipal Assembly, House of Delegates, to defray the expenses already incurred by your committee under said resolution."

On April 15, the said committee made its report and the House of Delegates adjourned *sine die.* On July 15, at a subsequent session of the House of Delegates, the following resolution was introduced:

"Whereas, the Special Committee of the House of Delegates on Tax Investigation did on the 8th day of April, 1904, report to this honorable House that, in accordance with the authority conferred on said

committee, it did, on the 6th day of November, 1903, employ Peter T. Barrett, an attorney, at an agreed compensation of $350 per month and William J. Gavigan, clerk and bookkeeper, at an agreed compensation of $200 per month, and on the 15th day of February, 1904, did employ William F. Ryan, an attorney, at an agreed compensation of $350 per month, and because of the expense thereby incurred by it the said committee requested this honorable House to authorize it to expend the sum of $3,615 to defray the same; and

"Whereas, This House did on said 8th day of April, 1904, authorize the expenditure of $3,615 to defray said expenses; and

"Whereas, The said Special Committee on Tax Investigation did on the 15th day of April, 1904, report to this honorable House that immediately upon the organization of said committee, to-wit, November 6, 1903, it employed Peter T. Barrett at an agreed compensation of $350 per month and Wm. J. Gavigan at an agreed compensation of $200 per month, and that on the 15th day of February, 1904, it did employ William F. Ryan at an agreed compensation of $350 per month; therefore be it

"*Resolved,* That the said Peter T. Barrett be allowed for his services to said committee the sum of $1,855, and that the said William J. Gavigan be allowed for his services to said committee the sum of $1,060, and that the said William F. Ryan be allowed for his services to said committee the sum of $700, to be paid out of the fund heretofore appropriated to pay the expenses of the House of Delegates and that the clerk of this House be instructed to draw warrants on said fund in favor of said Peter T. Barrett for $1,855, William J. Gavigan for $1,060 and William F. Ryan for $700."

The respondent is the Auditor of the city of St. Louis. There was oral evidence introduced which

tended to show the services of the relator as clerk of said committee, and that his services were reasonably worth $200 per month. The position of the City Auditor is well stated in his return to the alternative writ of mandamus. In this return he says:

"Defendant alleges that on or about the 3d day of October, 1904, the clerk of the House of Delegates drew his warrant in favor of relator for the sum of ten hundred and sixty dollars, and that said warrant was presented to defendant as Auditor of the city of St. Louis and that the defendant on or about the 25th day of October, 1904, declined and refused, and still declines and refuses, to audit and allow the same, and declines and refuses to draw a warrant for the same to pay the same.

"Defendant states that the House of Delegates did not possess the power or the authority under the law to authorize its said committee to make the alleged contract of employment of relator as clerk and the said alleged contract was and is void under the provisions of section 48 of article 4 of the Constitution of the State of Missouri.

"This defendant states further that under section 18, article 16, of the charter of the city of St. Louis no contract for services of any clerk could be entered into at a compensation exceeding the rate of eighteen hundred dollars per year; that is to say, exceeding one hundred and fifty dollars per month, and that the alleged employment of the relator as such clerk of the said committee of the said House of Delegates was without authority of law.

"This defendant states further that there is now no appropriation or fund, nor has there been any such appropriation or fund since the 1st of April, 1904, out of which the amount claimed by the relator could be paid, or against which this defendant as Auditor

of the city of St. Louis could draw or allow a warrant therefor.

"Defendant states further that the defendant as Auditor of the city of St. Louis is prohibited by section 11 of article 5 of the charter of the city of St. Louis from drawing or allowing a warrant in favor of the relator when there is no fund or appropriation against which such warrant could be drawn or allowed, or out of which it could be paid.

"Wherefore this defendant prays that the alternative writ be quashed, and the peremptory writ be refused, and that he be dismissed with costs."

John Faudi testified in effect as follows:

"Am Second Deputy Auditor of the city of St. Louis. Testified that he had with him in court the daily balance book covering all appropriations for the city. The daily balance book is an exact copy of the appropriation bill, from time to time. The different departments draw against it, and deductions are made showing balances every day. When the appropriation bill is passed, the credits are entered in that book, showing the amount carried by the bill to the various departments and objects mentioned in the bill. A separate account is kept for each appropriation. Whatever the bill appropriates to the House of Delegates is credited to the House, and as warrants are presented to the clerk of the House, the same are debited against those credits; that is, against the account. By reference to the book the balance of appropriation to any particular officer or department can be ascertained any day. The appropriation bill which was approved and went into effect on May 14, 1904, appropriated to the Municipal Assembly a total of $39,716.25, of which $23,640 was for salaries, $8,000 for office expenses and publishing proceedings of the council, $8,000 for office expenses and publishing proceedings of the House of Delegates, and $76.25 for unpaid bills. On

May 14, 1904, $8,000 was credited to the House of Delegates for miscellaneous or general expenses. On October 3, 1904, there was to the credit of the House of Delegates, unexpended, out of that fund $4,851.62. The $76.25 for unpaid bills was for one unpaid voucher in the office from the previous fiscal year. That $76.25 covered no unpaid bills which had been vouchered and left over in the office. The claim of relator had not been vouchered at that time, and did not reach the Auditor's office until October, 1904. On October 25, 1904, the Auditor declined to allow Mr. Gavigan's bill or to draw any warrant therefor. On October 25, 1904, the day when the Auditor rejected the bill, there was to the credit of the House of Delegates for general expenses, a balance of $4,094.22.''

The appropriation ordinance for the year 1903-4 introduced by respondent, shows:

''Sec. 1. There are hereby appropriated and set apart out of municipal revenue, the amounts, and for the purposes, as hereinafter specified, to cover expenditures of the current fiscal year, including bills unpaid at the beginning of the fiscal year namely:

''Municipal Assembly:

For salaries of members and officers ..$ 23,640.00
Publishing proceedings, printing, stationery, office expenses, furniture, rent of telephone and other expenses of Council ....................     8,000.00
Publishing proceedings, printing, stationery, office expenses, furniture, rent of telephone and other expenses of House of Delegates ..........     8,000.00
Bills unpaid at beginning of fiscal year     278.00

Aggregate ...... .... ........$39,918.00.''

There was also introduced the appropriation ordinance for 1904-5 which it is agreed was the same in items as the one above set out except the last item was $76.25 instead of $278.

As stated above the oral evidence shows that relator did the work of a clerk and worked under the direction of the committee. The trial court denied the peremptory writ of mandamus and entered judgment against relator for costs. Timely motion for new trial having been overruled relator duly perfected his appeal to the St. Louis Court of Appeals. The case is here from that court by order duly made on account of the constitutional questions involved in the return. Such are the issues for our consideration.

I. Respondent charges the alleged contract to be without foundation in law.

It is first urged that the contract with relator is violative of the provisions of section 48, article 4, of the Missouri Constitution. This provision reads: "The General Assembly shall have no power . . . to pay nor authorize the payment of any claim hereafter created against the State, or any county or municipality of the State, under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void."

There is further invoked by the respondent section 7 of article 16 of the city charter, the applicable portion of which is in the following language: "All contracts relating to city affairs shall be in writing, signed and executed in the name of the city, by the officer authorized to make the same, after due notice; and in cases not otherwise directed by law or ordinance, such contracts shall be made and entered into by the Comptroller, and in no case by the Assembly or any committee thereof."

Respondent also says the mandate of Revised Statutes 1899, section 6759, is preclusive of relator's right to recover. This section, so far as need be quoted, reads: "No county, city . . . or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

At the outset it will be well to notice that the legislative branch of the city is composed of two Houses, and the resolution before us is the act of only one. We can therefore have no situation like that of a city official in the position occupied by relator. No office could be created except by the act of both Houses of the Municipal Assembly. We take it further that there is no question as to the right of either branch of the legislative department to appoint a committee to investigate any subject-matter properly coming before it. [Charter, art. 3, sec. 31; sec. 1314 et seq., Rev. Mun. Code of City of St. Louis, 1901.]

Nor could it be well questioned that such committee could organize by the election of a chairman and clerk, but can it go outside of the committee and contract for the services of a clerk upon a mere resolution of the House creating the committee and providing for its selection and the selection of a clerk? The position held by relator was not one held by an ordinance duly passed by the legislative branch of the city government and approved by the mayor, but only by the resolution aforesaid. Can one branch of the legislative department by mere resolution create a posi-

tion and attach thereto a salary to be paid out of the
city funds? Or, further, can either branch of the legis-
lative department make a valid contract for services,
without the action of the other branch and of the
mayor? Or, can such contract be valid without being
in writing? If not, then is there such implied power
in the charter and laws, as would authorize the resolu-
tion, so far as relator is concerned, and the contract,
if such it could be called, as indicated in the resolu-
tion? All of these are pertinent questions. Relator
contends that there was power in the House of Dele-
gates to make the investigation mentioned in the reso-
lution. This we think correct, and as stated above, such
body had the right to designate a committee for that
purpose, but could either that body or its committee
create a salaried position, or contract for services?
To our mind there is no question that a salaried posi-
tion cannot be created by resolution of one branch of
the municipal legislative body. Such a proceeding is
entirely out of harmony both with the spirit and letter
of our law. Nor, do we think it less clear that one
branch of the legislative department cannot by reso-
lution make a valid contract. The creation of salaried
positions, as well as the expenditure of public funds,
is placed in the hands of the whole legislative depart-
ment, there being coupled therewith the restraining
veto power of the executive department. The resolu-
tion, therefore, created no legal position for relator,
nor did it constitute a valid and binding contract
under which he could act.

II. We think that inasmuch as relator was not a
public official, but a private citizen, before there could
be a valid and binding contract between him and the
city, such contract must be one duly authorized by
law and duly entered into in writing by the properly
constituted authorities. In other words the relator
being a mere alleged contractor for services with the

city, the provisions of section 6759, Revised Statutes 1899, fully apply, as well as the provision of the city charter above quoted. If the city of St. Louis by proper ordinance had made an appropriation for this specific work, and authorized the appointment of a person to do it, then a different question might arise. Such, however, was not the case and this matter will not be discussed. No city ordinance appears in the record, except a general appropriation ordinance, which will be discussed in a further paragraph. The authority for the appointment of relator, as well as the authority to appropriate funds for him, specifically, only appears in this resolution. In our judgment, under the statute cited aforesaid, inasmuch as relator was not an officer, holding an office, created by ordinance, the only legal method for the authorization of his work would have been by ordinance providing for such character of work and providing for the execution of a contract as by the statute and city charter last aforesaid prescribed. The force and effect of this statute and its purposely enacted restricting influence have been fully discussed by the courts, to which discussion we can add nothing. [Woolfolk v. Randolph County, 83 Mo. 501; Crutchfield v. Warrensburg, 30 Mo. App. 456; Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264; Taylor v. School District, 60 Mo. App. 372.]

III. It is strenuously urged that inasmuch as there is legal authority for the House of Delegates to make such investigations, then there is an implied power in that body to employ the necessary means, although it require the expenditure of the public funds of the municipality for that purpose, and although it requires a contract either express or implied, with some person to do the work. Many cases from other States are cited, and some are forcibly in point, but an examination of those cases fail to show the constitutional and statutory inhibitions on municipal contracts, which we

have, and for that reason the cases are not in point either in fact or in law.

But grant it that there was an implied power authorizing the House of Delegates to make a contract with relator for services to the city, yet, such power to contract, whether express or implied, must be exercised in pursuance of the terms of the statute and city charter quoted and in this case there is no such contract shown.

IV. There is yet a further reason fully justifying the conduct of respondent in refusing to audit the claim of relator. For the sake of the argument, grant it to be true that the legislative department could by appropriation ordinance prior to or after the work was done, pay relator for his services, yet have we such an ordinance in this case? We think not. The resolution it is true makes a specific disposal of a certain fund theretofore appropriated by the appropriation ordinance, but this resolution cannot go beyond the scope of the ordinance. By the charter, article 5, it is provided: "No money shall be paid out of the Treasury except on the Auditor's warrant, and no warrant shall be issued on any appropriation unless there is an unexpended balance to the credit thereof sufficient to cover such warrant and money in the treasury to pay it." And by section 14 it is provided: "No money shall be expended, nor shall any improvement be ordered involving the expenditure of money, except by ordinance, the provisions of which shall be specific and definite."

Now take either of the two appropriation ordinances in evidence, for they are both the same in words, except as to the last clause, we have no specific appropriation for this work or for this relator. Relator contends that the words "other expenses of House of Delegates," are sufficient to authorize the payment

of this money out of the unexpended balance in that fund. The whole clause of the ordinance reads:

"Publishing proceedings, printing, stationery, office expenses, furniture, rent of telephone and other expenses of House of Delegates ..........$8,000.00."

To our mind the rule of *ejusdem generis* fully applies here. The term "other expenses" means expenses of the character theretofore mentioned in that clause of the appropriation act and does not include an appropriation for work of the character performed by relator. To hold that it did include such would be to nullify the provisions of section 14, article 5, of the city charter, supra.

There are other questions raised which might be discussed, but these are sufficient for the final disposition of the case. The trial court was right and its judgment is affirmed.

All concur.