CITY WATER CO. OF CHILLICOTHE v. CITY OF CHILLICOTHE, MO.

(Circuit Court of Appeals, Eighth Circuit.   July 24, 1913.)

No. 3,914.

1. WATERS AND WATER COURSES (§ 188*) — WATER COMPANIES — MUNICIPAL GRANTS AND CONTRACTS.

Where a city ordinance, entering into a contract with and granting a franchise to a water company, specifies a definite term for its duration, the rights of the company and the obligation of the city under its contract terminate on the expiration of such term, and cannot be enlarged by implication.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 287, 288; Dec. Dig. § 188.*]

2. WATERS AND WATER COURSES (§ 200*)—WATER COMPANIES—CONTRACT WITH CITY—DURATION.

Such an ordinance limited the franchise of the company to 20 years and bound the city to pay hydrant rentals for "the full term as hereinbefore specified." Held, that the obligation of the city to pay such rentals terminated at the end of 20 years, and the contract was not extended by the fact that the city permitted the company to occupy the streets with its pipes thereafter.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

3. WATERS AND WATER COURSES (§ 200*)—WATER COMPANIES—LIABILITY OF CITY FOR HYDRANT RENTALS—IMPLIED CONTRACT.

Under Rev. St. Mo. 1909, § 2778, which provides that no city or town shall make any contract, except in writing, etc., as construed by the

Supreme Court of the state, a city cannot be held liable to a water company for hydrant rentals, after the expiration of the written contract between them, on the ground of holding over as lessee or any other ground of implied contract.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

4. WATERS AND WATER COURSES (§ 200*)—WATER COMPANIES—LIABILITY OF CITY FOR WATER—CONVERSION.

A city cannot be held liable in tort for the conversion of water, which it used from fire hydrants of a water company without any contract therefor, where it appears that such use was with the company's knowledge and consent.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

In Error to the District Court of the United States for the Western District of Missouri; John C. Pollock and Arba S. Van Valkenburg, Judges.

Action at law by the City Water Company of Chillicothe against the City of Chillicothe, Mo. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 196 Fed. 234.

Clifford Histed, of Kansas City, Mo. (James Harkless, of Kansas City, Mo., on the brief), for plaintiff in error.

Lewis A. Chapman and B. B. Gill, both of Chillicothe, Mo. (John H. Taylor and Forrest M. Gill, both of Chillicothe, Mo., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. The City Water Company, which was the plaintiff below, brought this action to recover of the defendant $22,154, so-called hydrant rental, from October 16, 1906, to September 30, 1911. The city defended on the ground that the contract under which it agreed to pay for the water expired on October 16, 1906. The court directed a verdict for the defendant.

In the first count of the petition the company sought to recover upon an express contract, which contract is found in the ordinance of October 16, 1886, under which the system of waterworks was constructed. The ordinance commences as follows:

"Sec. 1. Be it ordained by the mayor and city council of the city of Chillicothe, Missouri, that in consideration of the premises and the contract hereinafter set out there is hereby granted to Henry C. Comegys and Jared E. Lewis, of the city of New York, and their assigns and successors, the rights, privileges, and franchises herein contained, and the contract heretofore entered into by and between the mayor of the city of Chillicothe, Missouri, on behalf of said city, and the said Comegys & Lewis, is hereby ratified and confirmed."

The contract is then set out in full. Such portions of it as are material are as follows:

"(10) The said Comegys & Lewis, their assigns and successors, in addition to said fire hydrants, agree to furnish, free from any additional charge or expense, water for four public drinking fountains, one in each ward of said

city, for man and beast, and one spray fountain in the city park, and for city and public school buildings, fire, drill, and engine house, and for flushing gutters and sewers."

"(11) The said Comegys & Lewis, their assigns and successors, further agree to sell the aforesaid waterworks to the city of Chillicothe, if said city shall so elect, at the expiration of ten years from the date of the contract, and every five years thereafter, * * * and should the said city elect not to purchase and own the said works in the manner and time aforesaid, then all the rights and privileges of this contract granted to said Comegys & Lewis, their assigns and successors, shall continue in full force and effect until this contract shall expire by limitation, or as may be otherwise hereinafter provided."

"And in consideration of the fulfillment of all the foregoing agreements and obligations entered into by said Comegys & Lewis, their assigns and successors, the city of Chillicothe, through its board of mayor and city council, hereby agrees and stipulates as follows:

"(1) To grant to Comegys & Lewis, their assigns and successors, the right and franchise to construct, maintain, and operate waterworks in said city of Chillicothe for public and private supply of water within said city for the period of twenty years."

"(3) The said city of Chillicothe, Missouri, agrees to pay the said Comegys & Lewis, their assigns and successors, an annual rental of thirty-five dollars for each of said first ninety hydrants set, erected and put in use as aforesaid, and further agrees to pay an annual rental of thirty dollars for each hydrant placed and put in use upon the extension of mains which may be ordered laid by said city of Chillicothe, said extension to be at the rate of ten (10) fire hydrants to each mile of said pipes so laid, and located at such points as the city authorities may determine; all of the said rental to be paid in equal semi-annual payments in the full term as hereinbefore specified."

The second section of the ordinance is as follows:

"Sec. 2. For the purpose of meeting and paying the said hydrant rental as provided in this ordinance, there is hereby set apart during the continuance of this contract out of the annual levy for city purposes not exceeding five mills on the dollar of the assessed annual valuation of all taxable property in the city, which, when collected, shall be paid into a special fund known as the 'Water Expense' Fund, which shall not be used or applied to any other purpose whatever than the payment of the expense provided for in this ordinance; provided that any surplus in said water expense fund may be applied to any other lawful purpose."

As said in the case of the City and County of Denver v. New York Trust Company, 229 U. S. 123, 33 Sup. Ct. 657, 57 L. Ed. 1101, decided by the United States Supreme Court, May 26, 1913:

"The word 'contract' is used here, as elsewhere in the ordinance, as inclusive of the franchise to occupy and use the streets."

[1] There is nothing in the ordinance indicating what the rights of the parties should be at the expiration of the 20 years named therein, but this fact does not authorize a court to enlarge by implication the rights of the parties as fixed by the contract. In Detroit United Railway v. City of Detroit, 229 U. S. 39, 33 Sup. Ct. 697, 57 L. Ed. 1056, decided by the Supreme Court on May 26, 1913, it is said:

"Nor do we find more force in the claim of an implied contract to permit the railway to remain in the streets under such reasonable arrangements for public service as the situation might require. The right to grant the use of the streets was in the city. It had exercised it, had fixed by agreement with the railway the definite period at which such rights should end. At their expiration the rights thus definitely granted terminated by force of the terms of the instrument of grant. The railway took the several grants with knowledge of their duration, and has accepted and acted upon them with that fact clear-

ly and distinctly evidenced by written contract. The rights of the parties were thus fixed, and cannot be enlarged by implication. Louisville Trust Co. v. Cincinnati, 76 Fed. 296 [22 C. C. A. 334]; Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa, 234 [91 N. W. 1081]; Scott County Road Company v. Hines, 215 U. S. 336 [30 Sup. Ct. 110, 54 L. Ed. 221]; Turnpike Company v. Illinois, 96 U. S. 63 [24 L. Ed. 651]."

[2] The time during which the city bound itself to pay the hydrant rental was expressed in paragraph 3, by saying that it should be for "the full term as hereinbefore specified." The only term specified in the contract, either before or after this provision, is the term of 20 years found in the first of the clauses which state the obligations of the city. That the term of 20 years is "the full term as hereinbefore specified" admits of no doubt. The same construction must be placed upon this clause in the contract as if, instead of saying "for the full term hereinbefore specified," it had said "for the full term of twenty years." This period of 20 years expired on the 16th day of October, 1906. All the rentals accrued prior to that date have been paid by the city. Those here sought to be recovered are for periods after that date.

The theory of the plaintiff is that the provision which requires the company to furnish water contains no limitation as to the time during which it was to furnish it; that therefore it was bound to furnish it, even after the expiration of the 20 years, if the defendant allowed it still to occupy the streets with its mains and hydrants; and that, being bound to furnish it, the city was bound to pay for it. The contract, however, expressly limited the period during which the city was bound to pay to 20 years. The obligations of the company and the city in this respect were reciprocal. When the city agreed to pay for 20 years only, it necessarily followed that the company was bound to furnish water for 20 years only. The theory that the obligation upon the company to furnish water was unlimited as to time cannot therefore be maintained.

The contention of the plaintiff is that the limitation of 20 years applied only to the franchise or right to occupy the streets of the city for the purpose of its business, and that the city might waive it. That the city might waive this limitation and allow the company to stay in the streets is one thing; but to say that this mere waiver extended the period during which the city was bound to take the water and to pay the hydrant rentals named in the ordinance is quite another thing. If this were true, the result would be that the city would be bound to pay during the extended period, whether it used the water or not. If it established a system of its own, or took water from a system established by another company, it would still be obliged to pay the plaintiff if it allowed it to stay in the streets. In other words, the only way by which the city could have relieved itself of the obligation to pay the rental was by, immediately on the expiration of the 20 years, ordering the plaintiff to move its pipes from the streets. The contract admits of no such construction.

Does the fact that the city used the water after October 16, 1906, enable the plaintiff to recover upon the original contract? Under that contract the city was unquestionably bound to pay the hydrant rental

during the period of 20 years, whether it used the water or not. If sued during that period, the fact that it had not used the water would have constituted no defense. How, then, can the mere fact that the city after that period used the water create an obligation under the contract, when that fact during the existence of the contract was not necessary to create such obligation?

[3] It is further claimed by the plaintiff that the relation established by the ordinance between the parties is that of landlord and tenant, that the company leased the hydrants to the city for a period of 20 years, that upon the expiration of that period there was a holding over, and that thereby the contract was converted into a leasing from year to year. The case principally relied upon by the plaintiff to support this theory is Appleton Waterworks Company v. City of Appleton, 132 Wis. 563, 113 N. W. 44. In that case, after the period named in the ordinance had expired, the company undertook by notice to increase the hydrant rental over the amount named in the ordinance. A judgment in its favor in the court below was reversed, and the case would have been dismissed, had it not been apparently for an agreement by the city that it was liable for the amount named in the ordinance. It is thus seen that the point at issue in the case at bar was not litigated nor decided in that case. It appeared, moreover, that after the period named in the ordinance had expired the city paid and the company received the amount named therein, that the city was willing to continue payment of such amount for the future, and had appropriated money therefor. It further appeared that after the expiration of the term mentioned in the ordinance, and prior to the notice increasing the hydrant rental, the contract had been continued from year to year by mutual consent. In the case here it appears that nothing of that kind took place. The defendant has insistently refused to recognize the existence of any contract between itself and the plaintiff since October 16, 1906. It has refused to pay any rental as provided in the ordinance, and it seems that the plaintiff to some extent has assented to the theory that the original contract was not in force during the period elapsing since October 16, 1906. By the terms of the ordinance the company was bound to furnish water to the City Hall, yet after the expiration of the contract it furnished water to a rest room in the City Hall, charged the city for it, and the city paid the bill. This would not have been done, had the plaintiff considered that the original contract was continued in force from year to year. Moreover, the ordinance of June 15, 1908, by which the parties settled a claim for rental accruing prior to the expiration of the contract, contained this provision:

"It is understood by both parties to this contract and ordinance that since the date of the expiration of the water company's franchise with the city, viz., October 16, 1906, there has been no agreement or contract between the city and the said company by the terms of which the city is to pay for water furnished the city by the company."

The evidence shows that since October, 1906, the parties to this suit have had negotiations and dealings concerning their relation to each other, that the company has occupied the streets during that time and has sold water to private consumers, and that during this time the city

has never in any way recognized the original contract as being so far in force as to compel it to pay any hydrant rental.

In the application of the doctrine of landlord and tenant to this case there is, moreover, a difficulty in pointing out any particular authorized act of an agent of the city which would constitute such a use of the water immediately after October 16, 1906, as to indicate an intention to hold over. There is evidence that water was used on the occasion of certain fires in the city, but when these fires occurred does not appear. But, in any event, the theory that the relation of landlord and tenant existed between the parties cannot be applied to any case arising in Missouri, by reason of the statutory provisions hereinafter referred to. The plaintiff's claim must rest upon the theory that after 1906 there was a contract from year to year and for each year. This would, however, be a new contract, or a series of new contracts, and would not be the contract of 1886. Such a contract, if it existed, would be an implied contract, and not an express one. The authorities cited by plaintiff indicate that the contract between a landlord and tenant resulting from a holding over after the expiration of the term named in the original lease is an implied contract. When articles furnished are consumed, the law implies a contract to pay for the articles. When a tenant holds over, the law implies a contract to pay rent. In both cases there is an implied contract, but no express one. In one case the implication is that there will be paid what the article is reasonably worth; in the other, that there will be paid the same amount as has been paid. The fact that such an amount appears in some written document does not make an express contract out of an implied contract. The contract resulting from a holding over by a tenant being then an implied one, it falls under the condemnation of the Missouri statute hereinafter referred to. There can be no recovery on the first count of the petition.

This brings us to the consideration of the second count of the petition, which, so far as here material, is as follows:

"Plaintiff, further complaining, says: That continuously from the 16th day of October, 1906, to and including the 30th day of September, 1911, plaintiff was the owner of a system of waterworks duly located, installed, and in operation in the city of Chillicothe. That there were and are upon said system one hundred thirty-four (134) fire hydrants, and that during all of the time herein referred to the plaintiff continued to and did operate said waterworks system, and furnish through the same to the said fire hydrants a constant supply of water. That during all of said times the city of Chillicothe had and maintained an apparatus and equipment for the extinguishment of fires, and was in control and possession of the said fire hydrants. That from the 16th day of October, 1906, down to and including the said 30th day of September, 1911, the said one hundred thirty-four (134) fire hydrants still remaining intact and under the control of the defendant, and the defendant having access thereto, the said defendant did, during all of said time, use said hydrants and the water therefrom for the purpose of extinguishing fires, for fire, drill, and engine houses, and for flushing sewers and gutters, and other public uses. That thereby the said defendant became liable to the plaintiff for the reasonable value of the water and the use of said fire hydrants."

The demurrer to this count was sustained on the ground that a recovery thereunder was prohibited by section 2778 of the Revised Statutes of Missouri of 1909, which section is as follows:

"Section 2778. Contracts—Execution of by Counties, Towns, etc.—Form of Contract.—No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

The decisions of the Supreme Court of Missouri upon the effect of this statute are numerous and uniform. They hold that no liability can be imposed upon a city to pay the reasonable value of articles which it has accepted and used, when section 2778 has not been complied with. They hold, therefore, that a city cannot be made liable upon an implied contract. Woolfolk v. Randolph County, 83 Mo. 501; Anderson v. Ripley County, 181 Mo. 46, 80 S. W. 263; Phillips v. Butler County, 187 Mo. 698, 86 S. W. 231; Morrow v. Pike County, 189 Mo. 610, 88 S. W. 99; Miller v. Douglas County, 204 Mo. 194, 102 S. W. 996; State ex rel. v. Dierkes, 214 Mo. 578, 113 S. W. 1077.

A perusal of the statute above quoted and of these decisions will show that the theory of landlord and tenant advanced by the plaintiff cannot help it. The only written contract in the case expired on October 16, 1906. If the defendant is liable in this action, it must be by reason of something done by it after that date, and the act then done by it must have in legal effect produced a contract between it and the water company. But by the terms of section 2778 that contract was required to be in writing, was required to bear date after October 16, 1906, and was required to bear the signature of the mayor. No such writing was ever executed.

[4] It thus appears that if the plaintiff claims to recover upon this count upon the theory that it has furnished water and the city has used it, or upon any theory involving a contractual relation between the parties, the claim cannot be sustained. This the plaintiff seems to admit, as it says in its brief:

"Therefore, in the cases in which such recovery has been denied on implied contract, cited by Judge Pollock, and elsewhere appearing in the Reports, it would have amounted to a plain and palpable evasion of the statute to uphold the right of recovery. Manifestly, under those decisions, it would nullify the entire purpose of the act if the municipality, and those dealing with it, could evade the terms of the statute, and purposely make a void contract, and thereby create a valid obligation."

And in its brief it disclaims any such intention. It says:

"This relation, whatever its nature, was not the result of or in pursuance of agreement, and hence was not a subject-matter that could have been reduced to writing, for the very pointed reason that no arrangements had ever been made, or attempted to be had, between the city and the plaintiff, which could have been reduced to writing. It is not a case of the application of the doctrine of liability growing out of obligation assumed by or at the special instance or request of another, nor a service performed at the instance and request of the city, but it was a taking and appropriation of the property and use in the absence of any arrangement, either general or special, and without any negotiation or understanding of any kind."

It does, however, seek to sustain this count on the theory that it is to recover damages for a tort. The count, however, is wanting in all the allegations essential to such an action. It contains no allegation of any wrongdoing on the part of the defendant. It does not allege that the defendant unlawfully and without the knowledge of the plaintiff took water from the hydrants. It does not allege that this was done without the consent of the plaintiff. On the contrary, it negatives any such idea by alleging that the plaintiff furnished to the hydrants a constant supply of water.

There can be no conversion where the taking is with the consent of the owner. If the complaint had alleged that the plaintiff had turned the water off from the hydrants, disconnected them from its mains, and that the defendant had unlawfully connected them and used the water, without the knowledge or consent of the plaintiff, a different case would have been presented from that now before the court. The cases cited from the Supreme Court of Missouri to show that municipalities are liable for torts committed by them have no application to this case. The demurrer to the second count was properly sustained. In Boise Artesian Hot & Cold Water Company, Ltd., v. Boise City, 230 U. S. 84, 33 Sup. Ct. 997, 57 L. Ed. 1400, decided by the Supreme Court of the United States on June 16, 1913, and since this case was argued, the statutory provisions of Idaho and the facts in the case were so different from the statutory provisions of Missouri and the facts in this case that the holding in that case that the city was liable for water rent furnishes no authority for a similar holding in this case.

The judgment of the court below is affirmed.