# W. C. MULLINS v. KANSAS CITY, Appellant.

**Division Two, July 5, 1916.**

1. **CITIES: Contracts: Exemption from Operation of Section 2778 by Freeholders' Charter.** A city of one hundred thousand inhabitants or more is not, by the fact that it has framed and adopted a charter of its own, freed from the operation of Sec. 2778, R. S. 1909, requiring contracts of cities to be in writing. Section 9704 does not say that such charter shall supersede all laws of the State, but only such part of the organic laws then in force as govern and pertain to cities having one hundred thousand inhabitants or more, and section 2778 applies to all municipalities.

2. ————: **Contract for Hauling Earth: Greater Distance than Anticipated.** Plaintiff and the city entered into a written contract for the construction of an embankment to a settling basin for the city waterworks, and the city before the contract was executed pointed out to plaintiff a close-by hill, owned by it, from which the earth to construct the embankment might be obtained. The written contract provided that "it is expected that earth for the construction of the embankment will be procured on property owned by Kansas City, or on such property as the Board of Fire and Water Commissioners may secure," and that "the contractor agrees that there shall be no claim for extra work except as he may be directed by" said board "to do extra work;" and the statute required all public work to be done in pursuance to written contracts, entered into before the work was begun. After a part of the earth had been obtained from the near-by hill, it was discovered by the city engineer, who had the ultimate right of decision, that the earth therefrom was not of the proper quality out of which to construct the embankment, and thereupon the city purchased another hill and directed plaintiff to obtain earth from it to construct the rest of the embankment, whereby the distance of haul was increased 447 feet, which in turn increased the expense of the haul. Plaintiff contended the increased haul was not embraced within the contract, and the jury found as a fact that the board, protesting that it was included in the contract, orally agreed with plaintiff that if he would go ahead and finish the work he would be paid at its completion. He hauled the earth from the further hill, finished the embankment, and sues for the extra expense, having been paid in full according to the contract rates per cubic yard. While he sues

specifically for damages for breach of the contract, he contends for payment for the extra haul on a *quantum meruit*. *Held*, that there can be no recovery on the written contract, nor is the city estopped by the acts of the board from raising the invalidity of the oral agreement.

3. ———: Estoppel: Contract: Liability for Extra Work. A city is not estopped to deny its liability to a contractor by the oral promise of its proper committee that he shall be paid for extra work performed by him, where the statute specifically requires the contract for such work to be in writing. The doctrine of laches cannot be made to apply in the teeth of a statute.

4. ———: ———: Laches: In Face of Statute: Public Policy: Agency. Statute and charter provisions constitute powers of attorney to the officers of a city, beyond which they cannot go, and those dealing with such special agents must be held to know the limitations placed upon their powers by those statutes and charter; and when the statute requires the contract for doing a public work to be in writing, the city is not estopped, by laches or otherwise, to deny its liability to the contractor for doing extra work that was not in anticipation when the contract was made, by an oral promise of its proper committee, made after it was discovered that in order to complete the contract such extra work must be done, that if such extra work is done it will be paid for. Plain statutory requirements cannot be abrogated by estoppel.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson*, Judge.

REVERSED.

*A. F. Evans, A. F. Smith* and *J. A. Harzfeld* for appellant.

(1) If the hauling of earth from the more distant borrow pit was outside of and in addition to plaintiff's obligations under the contract, he would be entitled to compensation for the overhaul only upon showing a written agreement for such overhaul, signed by both parties to such agreement, and at a price agreed upon between him and the city in advance of the doing of the work, and in the absence of such showing plaintiff's action must fail. Sec.

6759, R. S. 1899, now Sec. 2778, R. S. 1909; Cook & Son v. Cameron, 144 Mo. App. 137; Likes v. Rolla, 184 Mo. App. 296; Cotter v. Kansas City, 251 Mo. 229; Construction Co. v. St. Louis, 256 Mo. 341; State ex rel. v. Dierks, 214 Mo. 588; Municipal Securities Corp. v. Kansas City, 256 Mo. 268. (2) The contract executed by the plaintiff also expressly provides, substantially in the language of the statute, that the plaintiff shall not be entitled to make any claim for extra compensation for extra work unless the price for such extra work is "agreed upon in writing at the time but before such extra work is commenced." Plaintiff's contract is, therefore, of itself, an answer to any claim for extra compensation in this case. Plumley v. United States, 226 U. S. 545; Ahern v. Boyce, 19 Mo. App. 556. (3) Plaintiff's contract provided that "it is expected that earth for the construction of the embankments will be procured on property owned by Kansas City or on such property as the Board of Fire and Water Commissioners may secure." The earth on the property then owned by the city proving unfit for use in the embankments, the Board of Fire and Water Commissioners secured the ground adjoining the property then owned by the city, which was the nearest ground available for a borrow pit. Plaintiff was bound, under his contract, to haul earth from this new ground, and he is not entitled to exact compensation on that account. Wear Bros. v. Schmelzer, 92 Mo. App. 314; Wilson v. St. Joseph, 125 Mo. App. 460; Dearborn Co. v. K. C. Co., 188 Mo. App. 212. All negotiations had prior to the making of plaintiff's written contract were merged in that contract. Ijams v. Provident Society, 185 Mo. 499. Even if all prior negotiations were not merged in the contract finally executed, plaintiff could not base a claim upon the statements of any representative of the city unless it has been established that that representative was authorized

to bind the city by his statements. Midland Lbr. Co. v. Kreeger, 52 Mo. App. 418; Walkeen Co. v. Johnston, 131 Mo. App. 699; Cook v. Cameron, 144 Mo. App. 146.

*Fyke & Snider* for respondent.

(1) As there was a written agreement for doing the work generally and there was a written order upon respondent making the change, no further written agreement was necessary because the city in its relation of the waterworks occupies the same position as a private corporation or private individual, and may be bound in the same way. The city by its board ordered respondent to do the work, accepted the benefit of his work, and recognized its obligation, after as well as before the work was done, to pay for it. In all fairness and justice it ought to pay. Water Co. v. Aurora, 129 Mo. 540; Steffen v. St. Louis, 135 Mo. 44; State ex rel. v. St. Louis, 145 Mo. 551; Simpson v. Stoddard County, 173 Mo. 421; State ex rel. v. Gates, 190 Mo. 540; Barree v. Cape Girardeau, 197 Mo. 382; Riley v. Independence, 258 Mo. 671; Heman v. St. Louis, 213 Mo. 538; McHugh v. Tacoma, 135 Pac. 1011; Contract Co. v. Tacoma, 140 Pac. 373; Audit Co. v. Louisville, 185 Fed. 349; Des Moines v. Welsbach, 188 Fed. 906; 2 Herman on Estoppel, 1365; Laird Norton Yards v. Rochester, 117 Minn. 114; Brantman v. Canky, 119 Minn. 396; Stifel v. St. Louis, 181 S. W. 577. (2) The specifications provide that bidders shall examine the topography of the ground and satisfy themselves as to the distance of the haul, etc. At the time the contract was let the city only owned one tract of ground which was close to the settling basin and the bids were made upon the theory that the earth would be taken from that hill. That it might be taken from some other property a further distance away was not within the

contemplation of the parties and therefore the city had no right without paying respondent the extra cost to send him to a further tract of ground to procure the earth with which to construct the settling basin. Koehring v. Muemminghoff, 61 Mo. 403; Crawford v. Elliott, 78 Mo. 497. (3) Moreover there is no rule of law that prevents parties from modifying or changing the terms of a written contract after it is made, as was done in this case. The specifications which provided that bidders should satisfy themselves as to the distance of the haul, etc., is as much a part of the contract as any other part of it, and the order directing respondent to abandon the hill where he had begun work, and where he had expended a large amount of money, was given after the original contract had been made, and after work had been commenced. The contract could not prevent the parties from changing the written contract by a subsequent parol contract—even if no written order had been given by the board directing the respondent to get earth from the other hill. Parties cannot by written agreement bind themselves not to subsequently waive or modify or change its terms by parol. Burnham v. Ins. Co., 63 Mo. App. 85. (4) Both sides offered evidence as to the reasonable expense of hauling the additional distance, and such reasonable cost was the proper measure of damages. Johnson Co. v. Ice Co., 143 Mo. App. 452. (5) Kansas City, being a city of more than one hundred thousand inhabitants, its charter adopted by the people is its organic law. Sec. 9704, R. S. 1909. Sec. 6759, R. S. 1909, does not apply to cities of one hundred thousand inhabitants, or more, and is not applicable in this case. Kansas City v. Oil Co., 140 Mo. 470; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Bacon, 147 Mo. 259; Brunn v. Kansas City, 216 Mo. 108. But if section 6759 is applicable, then it would seem that section 3728, R. S. 1909, is also applicable. It is a later statute. Miller

v. Douglass Co., 204 Mo. 194. (6) The written order to respondent was sufficient written agreement on the part of the board to require him to make this extra haul.

FARIS, P. J.—Plaintiff sued defendant for damages alleged to have accrued to him for violation of a contract for the construction of a settling basin for defendant's waterworks system, and had judgment for $9000. From this judgment, after the usual motions, defendant appealed.

The facts shown by the record, so far as they are necessary to understand the conditions existing and the law applicable, are fairly simple, and except upon one point, to which we shall hereafter advert, are practically undisputed. They are, to-wit: That in November, 1908, defendant city was desirous of having constructed at Quindaro, Kansas, an additional settling basin for its municipal waterworks system, and to this end advertised for bids for the construction thereof. Plaintiff was a bidder for the doing of this work. His bid was accepted, and in due course he entered into a written contract with defendant for the doing of the same, under certain specifications and conditions, which we shall as to pertinent parts hereinafter refer to and set out.

It is an exceedingly difficult task to characterize the petition of plaintiff herein, since it is to an extent *sui generis;* we shall therefore, in fairness, set out below the salient parts thereof, and which set forth, as we understand it, the position of plaintiff. These are as follows:

"As an inducement to plaintiff to enter into said contract said defendant, by the Board of Light and Water Commissioners, and the chief engineer of the water department, pointed out to plaintiff said tract of ground adjacent to said proposed settling basin,

268 Mo.—29

which ground consisted of a large high hill, and represented to plaintiff, and agreed with him, that all the earth necessary to be used in the construction of the embankments aforesaid would be furnished by defendant, and should be taken by plaintiff from said hill, and relying upon said representation and agreement, and being induced thereby, plaintiff duly entered into a contract with defendant to haul and place the necessary earth in said embankment at forty-five cents per cubic yard.

"Said hill so designated by defendant was covered with trees and brush, so that it was necessary for plaintiff to clear off said trees and brush, preparatory to commencing said work, and plaintiff did under the orders and directions of defendant clear off said land at great expense to himself, and did put the same in condition to remove the earth therefrom, and did excavate and remove therefrom and place in said embankment above twenty thousand cubic yards of earth.

"About April 1, 1909, plaintiff was, in violation of said contract, stopped by defendant from taking earth from said adjacent hill, and was, *in violation of said contract,* by defendant ordered and directed to procure the remaining necessary earth for said embankment from another tract of ground, which was eight hundred and fifty feet further away from said embankment than the hill first herein referred to, and plaintiff was compelled to, and did, under the orders and directions of defendant, procure the remaining necessary earth for said embankment, to-wit, about seventy-eight thousand cubic yards, from said distant hill, whereby plaintiff was put to great additional cost and expense in clearing the trees off said hill and in hauling the earth said additional distance, and was greatly delayed in the completion of said work, *to his great damage,* to-wit: in the sum of thirty thousand and six hundred dollars.

"Wherefore, plaintiff prays judgment against defendant for said sum of thirty thousand and six hundred dollars."

Upon the trial of the case plaintiff did not offer in evidence the contract above referred to and which was entered into between him and defendant. At the close of the testimony defendant interposed a demurrer to the evidence, which the court overruled. We merely state this so as to throw light on the attitude of plaintiff as regards the allegations of his petition and not as intimating that such demurrer should have been sustained for lack of offering this contract on plaintiff's side of the case; for since it was offered by defendant, who did not stand upon its demurrer, it is in the case for all purposes, anyhow.

This contract provides as to the places from which earth for the making of the embankments for the settling basin shall be obtained, thus: "It is expected that earth for the construction of the embankments will be procured on property owned by Kansas City, *or on such property as the Board of Fire and Water Commissioners may secure."* (Italics ours.)

At the time of entering into this contract by the parties herein, defendant city owned a parcel of land which adjoined the old settling basin and was near the proposed new one, which was to be constructed by plaintiff and which new one adjoined the old basin. After some 20,000 cubic yards of embankment had been built from earth obtained from the land of the defendant above mentioned, it was discovered by the engineers of the city (who under the contract had the ultimate right of decision as to the quality of materials), that the earth in this land, which consisted of a hill, was not of the proper quality out of which to construct the embankment. It was found that it consisted not of clay, which was re-

quired, but of gravel and sand, mixed with boulders, so that it became necessary to acquire another place from which to obtain the necessary earth. The defendant thereupon purchased 80 acres of land adjoining the original hill which it owned and notified plaintiff to obtain the remaining necessary earth for the construction of the embankments from the latter place. Some ninety-seven thousand cubic yards of earth were required for the embankments. Plaintiff obtained about twenty thousand cubic yards of this from the old pit, and took the remainder, some seventy-seven thousand cubic yards in all, from the new pit on the land last purchased. Before doing this, however, plaintiff went before the Board of Fire and Water Commissioners (hereinafter for brevity and convenience called simply Fire and Water Board) and complained that the obtaining of earth from the new pit, which was 447 feet from the old pit, or which necessitated an increased average haul of that distance, was not within his original contract. The Fire and Water Board contended that it was. Plaintiff seems to have insisted that he should have a written order from said board to go on with this work. The Fire and Water Board made no entry anywhere, or in anywise upon their records, touching the matter of so-called extra haul, nor of plaintiff's appearance and contentions; so proof of the matter rests wholly in parol assertion and in parol denial. Relating what transpired before this board plaintiff, testifying for himself, says: "I went down to them and wanted a written order to go on with this work and I wanted to know how much they were going to pay me for the extra work. At the time Mr. Brent, Mr. Groves and Mr. Meyers were the members of the Fire and Water Board. They wouldn't enter into any written agreement that evening, but Mr. Groves and Mr. Brent told me I would be paid. They said to go ahead and do the work and it would be settled for

after it was completed." Plaintiff, as he states, insisted upon having a written order as to going on with this work and as to change of location of the pit from which he got the earth for the embankments. Shortly after plaintiff appeared before the Fire and Water Board, and had, as he relates, the conversation set out above, said board procured the writing to him by their consulting engineer of a letter, which is referred to by plaintiff as the order to proceed with the work. This letter is pertinent and is, for some reason, much relied on by plaintiff. Omitting signature and merely formal parts, it reads as follows:

"It does not appear as though sufficiently rapid progress is being made in the construction of the settling basin at Quindaro, and it is desired that you employ a larger force in order to utilize fully this favorable season for construction and to secure a rate of progress which is consistent and in harmony with the terms of the contract.

"You have already been verbally notified that the new ground purchased by the Board of Fire and Water Commissioners adjoining the ground from which you are now taking earth for the reservoir embankment, is available for your use under the directions of the constructing engineer and under the terms of your contract.

"Will you kindly give this matter your early attention in order to insure the desired rate of progress?"

This letter, it will be noted, does not recognize the extra haul necessitated as being beyond the original contract, but expressly says that it is within such contract. Plaintiff thereupon proceeded with the work. He constructed the embankments about which this controversy revolves and from time to time, on estimates of the work completed, was paid therefor at the original contract price set out in the

written contract between him and defendant, which price and payment he accepted without objection so far as the record shows. He seems to have been paid in full at the contract price for the entire work at its conclusion, and touching any part thereof, except the compensation sued for, arising from increase in length of haul, he makes no claim.

The written contract made between plaintiff and defendant and referred to above, is exceedingly lengthy. No good, commensurate with the labor and space involved, would be subserved by setting out herein the whole of it. Pertinent parts thereof which will be referred to in our discussion of the case, read thus:

"31. The said Board of Fire and Water Commissioners shall have the right to make any alterations that may hereafter be considered by them as necessary and desirable in the interest of the city, in lines, grades, forms and dimensions of the work either before or after the commencement of the same, provided such alterations do not materially change the character of the work; but in case such alterations increase the quantities, the said contractor shall be paid for such increase at specified contract rates, or if no such rates be specified, at cost plus ten per cent; but should the alterations diminish the quantities and the extent of the work, then such alterations shall not constitute a claim for damages, nor for anticipated profits on the work so altered or dispensed with. It is understood, however, that such alterations can only be made upon the written order of the engineer and approved by formal order of the Board of Fire and Water Commissioners.

"32. The contractor agrees that there shall be no claim for extra work except as he may be directed in writing by the Board of Fire and Water Commissioners to do extra work. Such extra work so ordered will then be paid for in accordance with

the schedule of prices named in this contract, or if no such price be named, then in accordance with prices that may be agreed upon in writing at the time, but before said extra work is commenced.''

Much testimony came in upon the trial on plaintiff's part, tending to prove that prior to the entering into the contract mentioned he had examined the location of the proposed settling basin and the adjacent hill owned by defendant, and tending to show that he was led to believe that this hill would be the place from which the whole of the earth would be obtained. Objection was made to this sort of testimony by the defendant on the theory that antecedent conversations and dealings were merged in the contract. In passing it may be said, largely as a matter of curiosity, that all three members of the Fire and Water Board testified in the case for defendant; each of them denied categorically that any verbal agreement was made with plaintiff as to paying him extra for the increased haul arising from the change of place of obtaining earth with which to make the embankments. To a slight extent plaintiff was corroborated in a somewhat indefinite way by one Armstrong, who seems to have been clerk of the Fire and Water Board at the time plaintiff went before this Board. Armstrong, upon this point, says: ''They didn't take him up or make any order, I mean that day, but the way they talked was that he should go in there and take the dirt out of there, that is out of this new ground that they had bought, that he should take the dirt from there and they would settle with him afterwards.''

Many errors in the admission of testimony on the part of plaintiff are urged by defendant; as likewise many errors in the refusal to admit testimony on the part of defendant are called to our attention; but in the view we are constrained to take of the case we think it will be unnecessary to refer to any of these. Defendant upon this appeal relies largely

upon the alleged lack of testimony to support the finding and judgment, which point it has raised in divers sufficient ways. Since in its brief the city has chosen to rely upon this. point alone, we will follow it, as we are permitted, in our discussion.

I. The defendant contends that the extra haul was within the express terms of the written contract and that it should not pay anything on account of it for this reason. Plaintiff denies this and while specifically suing for damages for a violation of this contract, contends for payment for this extra haul upon a *quantum meruit,* not only conceding but denying the existence of any such written contract as defendant urges is required by section 2778, Revised Statutes 1909. This section reads thus:

**Freeholders' Charter: Exemption from Operation of Sec. 2778.**

"No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing."

Plaintiff denies the application of the above section to the affairs of a city having a population of over 100,000 and existing under a special charter, and contends that section 9704, Revised Statutes 1909, sets such a city free from all statutory provisions and restraints.

We do not so construe the latter section. We have an article in our statutes which contains "laws applicable to cities with over one hundred thousand

inhabitants." [Art. 16, chap. 84, R. S. 1909.] Said chapter, among• other things, provides that a city having over 100,000 inhabitants may frame, ratify and adopt a charter "for its own government, *consistent with and subject to the Constitution and laws of this State."* [Sec. 9703.] Said section 9704 provides that after the ratification and adoption of such a charter, it shall constitute the entire *organic* law of such city and shall supersede all laws of this State then in force in terms governing or appertaining to cities having one hundred thousand inhabitants or more.

It will be noted that the latter section does not say that such charter *shall supersede all laws of this State,* and stop there, but it modifies and limits the laws so superseded thereby as *laws then in force in terms governing* cities having 100,000 inhabitants or more. In short, the limitation of said section is as to a particular sort of laws, not general, but such as govern and appertain to cities having 100,000 inhabitants or more. But that is not all of the *indicia* which point to the meaning and proper construction of said section 9704. The latter section limits the laws which the charter supersedes to the entire organic law of such city. We know that under our system and manner of speaking·in this State, we apply the term *organic law* of the cities of the several classes to the articles and chapters of the statutory laws which govern and regulate the several classes of cities, towns and villages; that in a way, such articles and chapters delimit and fix the powers of such cities, towns and villages in a manner similar to that in which the Constitution of the State sets bounds to the powers of the three co-ordinate branches of State government. Nor is this all; there is, as we view it and construe it, an express exception to the power conferred on such cities to frame a charter. This exception is that the provisions of such charter shall be "subject to the Constitution and laws of this State"

and consistent therewith. [Sec. 9703, R. S. 1909.] This provision and limitation refers to all laws of the State, *except those then in force in terms governing and appertaining to cities having one hundred thousand inhabitants or more.* So we have no hesitation in holding that this specific contention of plaintiff, viz., the fact that defendant city has framed and adopted a special charter and has over 100,000 inhabitants, does not of itself create immunity against the provisions of said section 2778, and that the provisions thereof apply to Kansas City. [Municipal Securities Co. v. Kansas City, 265 Mo. 1. c. 268; Heman Construction Co. v. St. Louis, 256 Mo. 332.] That it applies to cities not under special charter and to counties and municipalities generally, can not, we apprehend, be seriously gainsaid. [Cook & Son v. Cameron, 144 Mo. App. 1. c. 142; Anderson v. Ripley County, 181 Mo. 46; Likes v. Rolla, 184 Mo. App. 296; Heidelberg v. St. Francois County, 100 Mo. 69.]

II. But even if said section does make void a city's oral contract, it is urged that it does not here apply, because defendant city, through the acts of the members of its Fire and Water Board, is estopped to deny that it had a valid contract with plaintiff; that is, upon the facts here the law ought not to listen to the defendant upon such a defense. This contention is bottomed upon the facts (which plaintiff avers, and which the then members of the Fire and Water Board deny), that two of the three members of this board orally told plaintiff "to go ahead and do the work and it would be settled for after it was completed," and that plaintiff insisted upon having and got a written notice to do this work.

*Estoppel to Plead Contract Was not Written.*

While as stated, the then members of this board severally, when called in this case as witnesses, deny this statement, and while the written records of the

board are wholly silent about it, and while the written notice which the plaintiff insisted upon getting, contradicts him, his version of it was for the jury. They believed him, and we must, for the purposes of this discussion, accept as true what he says about it. It is, however, conceded, as the quoted excerpts forecast, that no price was agreed on for this work before the work was done, or at any other time.

III.  It is in our view idle to consider whether any recovery for this extra haul could be had in a suit at law (in short, in a suit wherein fraud and mistake can cut no figure) upon the original or written contract here. The quoted provisions of section 32 of this contract as to extras, concededly not complied with, and the clause therein providing that the earth for the making of the embankmetn should be procured on property owned by defendant, or "on such property as the Board of Fire and Water Commissioners may secure," and mayhap other provisions, utterly preclude recovery, if this action is, or if it were, bottomed on the original written contract. [Plumley v. United States, 226 U. S. 545; Ahern v. Boyce, 19 Mo. App. 552.]

IV.  So the discussion recurs to the sole point left: Is the defendant city estopped by the acts of its Fire and Water Board from raising the question of the invalidity of its oral agreement with plaintiff? We do not think it is. We recognize that the modern doctrine is tending more and more toward the view that a municipality, no more than an individual, ought not to be allowed so to act toward others as to induce them to pursue a course harmful to them and then in the end refuse to comply with the promise inducing such action, so as to save harmless him who was hurt by reliance on the promise made. But will such a doc-

trine apply in the very teeth of a-public statute which expressly forbids the making of the promise, or contract, in the manner in which it was made here?

The cases found in this State wherein what for convenience is called estoppel, was successfully invoked against municipalities, will be found to fall largely, if not entirely, into that branch of estoppel called laches. [Boone County v. Railroad, 139 U. S. 684; Simpson v. Stoddard County, 173 Mo. 1. c. 466; Dunklin County v. Chouteau, 120 Mo. 577; 2 Dillon on Mun. Corp. (5 Ed.), sec. 951; Town of Montevallo v. School District, ante, p. 217; City of St. Joseph v. Terminal Railway Co., ante, p. 47.] Cases, in other words, wherein through the long neglect of the municipality to assert a legal right and through pursuing for a long time a misleading course of action touching the subject-matter, he who defends for laches was lured to his hurt, so that it would be unconscionable to permit the long dormant right to be asserted as to him who was thus misled. [Simpson v. Stoddard Co., 173 Mo. 1. c. 466; Town of Montevallo v. School Dist., supra; City of St. Joseph v. Terminal Railway, supra.] In the case of Simpson v. Stoddard Company, supra, the idea that such estoppel is of the sort called laches, is expressly recognized; for it is said: "We take it that it is no longer a disputed question that the doctrine of laches applies to a county or other municipal corporation, as well as to individuals."

V. But be this as may be, it is plain that to allow such a doctrine upon a contemporaneous matter to be successfully asserted in the teeth of a statute which forbids, and of which statute plaintiff must be held to know, would be against public policy. Statutes and charter provisions constitute powers of attorney to the officers of municipalities, beyond which such officers

*Estoppel and Public Policy.*

may not go. Those dealing with such agents of municipalities must be held to know these statutory and charter powers which effectually limit such officers' powers and radius of action. Officers of municipalities are not general agents; they are special agents, whose duties are set forth in the statutes which create them and which define their powers, and of these statutes, and therefore of these officers' powers, the public which deals with them must take notice and govern themselves accordingly. [Lamar Twp. v. Lamar, 261 Mo. 171.; Morrow v. Surber, 97 Mo. 155.] Vain and futile would Constitution and statutes and charter be if any officer of the State, or of a county, or of a city, or other municipality, could follow them only when he saw fit. If by estoppel such salutary provisions, enacted with wise foresight as checks upon extravagance and dishonesty, can be utterly abrogated at will by any officer, such provisions then subserve no purpose and the public corporation has no earthly protection against either greed or graft. [Likes v. Rolla, 184 Mo. App. 296; Cook & Son v. Cameron, 144 Mo. App. 137; State ex rel. v. Dierkes, 214 Mo. 578.]

This case illustrates the colossal opportunity for evil allowed by such a view. Here the original contract for this work called for an expenditure of some ninety-three thousand dollars; extra compensation of over thirty thousand dollars was demanded, and compensation for nine thousand dollars worth of such extras was actually found by the jury. Quoting from Woolfolk v. Randolph County, 83 Mo. l. c. 506, it was appositely said in discussing this statute in the case of Anderson v. Ripley County, 181 Mo. l. c. 60:

" 'The manifest purpose of the requirement is that the terms of the contract shall, in no essential particular, be left in doubt, or to be determined at some future time, but shall be fixed when the con-

tract is entered into. This was one of the precautions taken to prevent extravagant demands, and to restrain officials from heedless and inconsiderable engagements. If a person can, without such contract, in the first instance, go on and bind the city as on an implied contract for the value of his services, it would defeat the very object and design of the Legislature in enacting said statute.' ''

In considering this case from the standpoint of plaintiff's right of recovery upon a *quantum meruit,* we have but followed the lead of learned counsel who each elected to choose this battle-ground, which in fact seems far afield from the cause of action pleaded. A line of less resistance might have been found by considering whether, since this is a *suit for damages for the violation of a contract,* there was in fact any violation of the contract. Or, if there was such a breach, whether plaintiff by continuing work upon it, and by completing it fully, and by accepting without objection, pay under it, did not in fact waive such breach. Other contentions are made which we are told preclude recovery; e. g., the lack of an antecedent appropriation of the money to pay for the work. But the point discussed disposes of it, and since this point is one of law applied to conceded facts, it would subserve no useful purpose to remand it. Let it be reversed. All concur.