

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| KANSAS CITY AREA TRANSPORTATION AUTHORITY, | ) ) ) | |
| Respondent, | ) ) | |
| v. | ) ) | WD82459 |
| GERARD H. DONOVAN, ET AL., | ) ) | Opinion filed:  February 4, 2020 |
| Appellants. | ) ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABLE CHARLES H. MCKENZIE, JUDGE**

Special Division:  Edward R. Ardini, Jr., Presiding Judge,
Mark D. Pfeiffer, Judge and Cynthia L. Martin, Judge

Sherry DeJanes Donovan and Gerard Donovan appeal the judgment of the Circuit Court of Jackson County granting summary judgment in favor of Respondent the Kansas City Area Transit Authority ("KCATA"). At issue in this case is ownership of a parcel of real property: the KCATA claims that the property is part of the right of way it owns in fee simple and upon which it maintains the Harry Wiggins Trolley Track Trail and the Donovans claim ownership in the property as part of their backyard. The trial court determined that the KCATA owns the property at issue in fee simple, the Donovans did not acquire title to the property by adverse possession, and the Donovans' affirmative defenses of laches, waiver, and estoppel were inapplicable to the "issues in this case." Finding no error, we affirm.

## Factual and Procedural Background[1]

The KCATA is a bi-state public agency created by an interstate compact between Missouri and Kansas, and approved by the United States Congress. The KCATA is "a body corporate and politic and a political subdivision of the States of Missouri and Kansas." § 238.010.[2]

Sherry DeJanes Donovan and Gerard Donovan, husband and wife, reside at 6209 Brookside in Jackson County, Missouri. This property was originally platted as Lot 3, Block 13, Wornall Homestead, and we refer to their property throughout this opinion as Lot 3. Sherry[3] acquired a fee simple interest in Lot 3 in 1983. Two years later she married Gerard. In 1999, Sherry conveyed Lot 3 via quit-claim deed to herself and Gerard.

In 1989, the Donovans erected a wooden privacy fence that extended approximately 40 feet beyond what was originally platted as the rear property line of Lot 3. The area enclosed by the fence that is situated outside the original property line is approximately 1,800 to 2,000 square feet in size. In 2016, the Donovans replaced most of the fence due to deterioration and erected a new fence in essentially the same place and in the same style as the 1989 fence.

As shown on the recorded plat for Wornall Homestead, the rear property line of Lot 3 abuts the Kansas City and Westport Belt Railway Right of Way ("Right of Way"). The Right of Way is a 100-foot-wide strip of land; railroads had previously operated upon the Right of Way, but now it is home to the Harry Wiggins Trolley Track Trail (the "trail"), a six-mile-long trail for walkers,

---

[1] We "review the record in the light most favorable to the party against whom judgment was entered, according the non-movant the benefit of all reasonable inferences from the record." *City of St. Louis v. State*, 382 S.W.3d 905, 910 (Mo. banc 2012) (internal marks omitted). Facts set forth "in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

[2] All statutory references are to RSMo 2016.

[3] To avoid confusion, we refer to Sherry DeJanes Donovan and Gerard Donovan by their first names when referring to them individually. No disrespect or familiarity is intended.

runners, and bicyclists. The KCATA is the current record titleholder of the Right of Way. The KCATA installed the trail and maintains it by providing trash removal, mowing, utilities, and general upkeep.

The property in dispute in this action is the parcel of property enclosed by the Donovans' fence that extends beyond Lot 3's original rear property line. The KCATA asserts that this parcel of property is part of its Right of Way, and that it acquired a fee simple interest in the Right of Way in 1981. The Donovans assert that "the KCATA never received fee simple title to the right of way that abutted the [Donovans'] property because the right of way was merely an easement which had been abandoned prior to the attempted transfer to the KCATA." The Donovans further assert that "[a]s a result of the abandonment, ownership of the property formerly burdened by the easement vested in [them] as abutting landowners." In light of this disagreement as to ownership of the property, we recount its chain of title.

In 1892, John Wornall passed away and left real property to his four sons: Frank Wornall, Thomas Wornall, John Wornall, Jr. and Charles Wornall (the "Wornall sons"). We refer to this property as the "Wornall property."[4] Included in the Wornall property was what is now Lot 3 and the portion of the Right of Way that abuts Lot 3. In 1898, by "Warranty Deed," the Wornall sons conveyed the fee simple interest in the Wornall property to Roma Wornall, their father's widow, "excepting the right of way of the Kansas City and South Eastern Railway Company through said land the title to which said right of way is in dispute between said Railway Co. and the heirs of Jno [sic] B. Wornall, Decd."

In 1901, by a "Deed of Right of Ways," the Wornall sons and Roma together "d[id] grant bargain and sell" to the Kansas City and Westport Belt Railway Company "a strip of land Fifty

---

[4] The Wornall property is located between what is now known as 59th Street to the north, 63rd Street to the south, Main Street to the east, and Wornall Road to the west.

feet in width on each side of the Center line of the Railroad of said Company as the same is or may be located over and across" the Wornall property, for consideration of $3,250.

In 1909, by "General Warranty Deed," Roma conveyed her fee simple interest in the Wornall property to the J.C. Nichols Land Company, excepting "the right of way of the Kansas City and South Eastern Railway Company now known as the Kansas City and Westport Belt Railway Company through said land." The J.C. Nichols Land Company platted the Wornall property as the Wornall Homestead subdivision, dividing the property into various tracts, including Lot 3.

In 1962, the Kansas City and Westport Belt Railway Company (the "Railway") transferred all of its property to James Ashley, Sr. and James Ashley, Jr. The Ashleys operated a railroad on the Right of Way until 1968. In 1970, James Ashley, Sr. passed away, leaving the Right of Way to James Ashley, Jr. In 1981, by Quit-Claim Deed, James Ashley, Jr. and his wife Pamela Ashley conveyed their interest in the Right of Way to the KCATA.

In 2016, the KCATA filed this action against the Donovans, asserting three claims. In Count I, the KCATA sought a declaratory judgment that the Donovans had no interest in the parcel of property at issue and that they were encroaching upon the KCATA's property. In Count II, the KCATA requested the trial court quiet title to the property in favor of the KCATA, and in Count III the KCATA requested the trial court order the Donovans "to vacate the property on which they have encroached."

In response, the Donovans filed answers asserting various affirmative defenses, including laches and waiver, statute of limitations, equitable estoppel, res judicata, and collateral estoppel. The Donovans also asserted three counterclaims. In Counterclaim I, they sought a declaratory judgment that the KCATA had no interest in the parcel of property. In Counterclaim II, they

requested the trial court "quiet[] the fee simple title of the property which is the subject of this litigation and bar[] [the KCATA] from any right, title or interest in the property." In Counterclaim III, they asserted that their "open, hostile, notorious and exclusive possession and dominion over the subject real property continuously since 1989 constitute[d] adverse possession, thereby, vesting title in the [Donovans]."

The parties filed cross-motions for summary judgment. After extensive briefing,[5] the trial court entered its judgment granting the KCATA's motion and denying the Donovans' motion. The trial court found that the interest conveyed to the Railway "in the 1901 deed was a fee simple interest." The trial court further found that "the property at issue is public land and therefore the Counterclaim of Adverse Possession as asserted by the [Donovans] fails." The trial court based this finding on section 516.090, which prohibits the taking of public land by adverse possession. Finally, the trial court found that "[t]he same logic applies to the [Donovans'] Counterclaims of Laches and Waiver"[6] and "that the other Affirmative Defenses asserted do not as a matter of law apply to this [sic] issues in this case." The trial court thus sustained the KCATA's Motion for Summary Judgment "as to Counts I, II, and III of the Petition, and as to the Counterclaims" of the

---

[5] After the cross-motions were fully briefed, the Donovans filed an amended motion for summary judgment and suggestions in support. At the outset of the trial court's judgment, it noted that the following documents were before the trial court: Plaintiff's Motion for Summary Judgment, Plaintiff's Memorandum in Support of Its Motion for Summary Judgment, Defendants' Response to Plaintiff's Motion for Summary Judgment, Plaintiff's Statement of Uncontroverted Facts, Defendants' Motion for Summary Judgment, Defendants' Suggestions in Support of Their Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, Defendants' Amended Response to Plaintiff's Statement of Uncontroverted Facts, Plaintiff's Response to Defendants' Statement of Uncontroverted Facts and Statement of Additional Material Facts, Plaintiff's Combined Reply Memorandum in Support of Its Motion for Summary Judgment and Memorandum in Opposition to Defendants' Motion for Summary Judgment, Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, Defendants' Response to Plaintiff's Statement of Additional Material Facts, Defendants' Additional Exhibit to Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment, Defendants' Suggestions in Support of Their Amended Motion for Summary Judgment, Defendants' Amended Motion for Summary Judgment, Plaintiff's Memorandum in Opposition to Defendants' Amended Motion for Summary Judgment, Plaintiff's Response to Defendants' Statement of Uncontroverted Facts, and Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Amended Motion for Summary Judgment.

[6] We note that the Donovans asserted laches and waiver as affirmative defenses, not counterclaims.

5

Donovans. This appeal followed.

Additional facts are set forth as necessary in our analysis.

## Standard of Review

Entry of summary judgment is proper where the moving party has demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).[7] "The right to summary judgment is solely an issue of law that does not require any deference to the trial court." *City of St. Louis v. State*, 382 S.W.3d 905, 910 (Mo. banc 2012) (citing *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). "Accordingly, an appellate court reviews the grant of summary judgment *de novo*." *Id.*

In reviewing the grant of summary judgment, the appellate court "will review the record in the light most favorable to the party against whom judgment was entered, according the non-movant the benefit of all reasonable inferences from the record." *Id.* (internal marks omitted). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. The appellate court "may affirm if the record shows that summary judgment was appropriate either on the basis it was granted by the trial court or on an entirely different basis, if supported by the record." *Brehm v. Bacon Twp.*, 426 S.W.3d 1, 4 (Mo. banc 2014).

## Analysis

The Donovans raise four points on appeal. In their first point, they assert that the "trial court erred in finding that the interest conveyed in the 1901 deed was a fee simple interest" in that

---

[7] All Rule references are to the Missouri Supreme Court Rules (2019).

"the cumulative facts demonstrate that the 1901 deed merely conveyed an easement." In their second point, they assert that the "trial court erred in finding that the counterclaim of adverse possession against KCATA fails" in that "the KCATA is not the type of entity to which the protections of RSMo § 516.090 are extended." In their third point, they assert that the "trial court erred in finding that the counterclaim of laches and waiver does not apply to the KCATA" in that "laches does apply to entities such as the KCATA." In their fourth point, they assert that the "trial court erred in finding that the affirmative defenses raised by the Donovans do not apply to the issues in this case" in that "estoppel does apply to entities such as the KCATA." We address each point in turn.

*Point I – The 1901 deed conveyed a fee simple interest in the Right of Way,*
*not merely an easement*

The Donovans argue that the 1901 deed did not convey a fee simple interest in the right of way; rather, it merely conveyed a right of way easement, which was abandoned in 1968 when the Ashleys ceased using the easement for railroad purposes. At that time, the Donovans assert, the property upon which the easement was located "reverted to the abutting landowners," and the Ashleys did not convey—and could not have conveyed—a fee simple interest in the Right of Way to the KCATA in 1981. We disagree.

The interpretation of a deed "is a question of law that is reviewed *de novo.*" *Hinshaw v. M-C-M Props., LLC*, 450 S.W.3d 823, 826 (Mo. App. W.D. 2014). "In construing a deed, the court's major task is to find the grantor's intent within the four corners of the instrument." *Burk v. Ann W. Jones Co., Inc.*, 687 S.W.2d 582, 585 (Mo. App. W.D. 1985). The 1901 deed, which is titled "Deed of Right of Ways," provides in relevant part:

> Roma J. Wornall, Frank C. Wornall, Thomas Wornall, John B. Wornall and Charles
> H. Wornall of Jackson County, Missouri in consideration of the sum of Thirty Two
> Hundred and Fifty Dollars to them in hand paid by the Kansas City & Westport

7

Belt Railway Company, the receipt of which is hereby acknowledged and in consideration of the benefits that would accrue to them from the construction of the Railroad of said Company do grant bargain and sell unto said Kansas City & Westport Belt Railway Company and its successors and assigns, a strip of land Fifty feet in width on each side of the Center line of the Railroad of said Company as the same is or may be located over and across the following described lands situated in the County of Jackson in the State of Missouri to wit:

All of that part of the west half of the Northwest quarter of Section Five (5), Township Forty eight (48) Range Thirty three (33) in Jackson County, Missouri described as follows: A strip of land One Hundred feet in width . . . , said strip being Fifty (50) feet in width on either side of the center line of a railroad tracks now existing across said land . . . said One Hundred (100) foot strip being Five and Twelve one hundredths (5.12) acres more or less.

Also, all that part of the northwest quarter of Section Thirty Two (32), Township Forty nine (49) Range Thirty three (33) in Jackson County, Missouri described as follows: A strip of land One Hundred (100) feet in width . . . said strip of land being Fifty (50) feet in width on either side of the center line of a certain railroad track now located across said land . . . the area of said one hundred (100) foot strip being Two and Seventy one hundredths (2.71) acres more or less except the timber thereof, if any, which is hereby reserved the privilege of cutting trees outside of said strip liable to endanger the railroad tracks by falling, and the privilege of hauling materials when necessary over the other parts of said land in such ways as not to injure it is hereby granted.

Based on the language used in the deed, we find that the Wornall sons and Roma conveyed a fee simple interest in the Right of Way to the Railway. Pursuant to the 1901 deed, the Wornall sons and Roma did "grant[,] bargain and sell" the Right of Way to the Railway. "The intent to convey an indefeasible estate in fee simple is effected by use of a covenant in the deed, by the grantor, in which the grantor represents ownership at the time of the execution of the deed of an indefeasible estate in fee simple." *Webster Oil Co. v. McLean Hotels, Inc.*, 878 S.W.2d 892, 894 (Mo. App. S.D. 1994); *see also La Near v. CitiMortgage, Inc.*, 364 S.W.3d 236, 241 n.6 (Mo. App. E.D. 2012). "This is done, according to Missouri statutes, by use of the words 'grant, bargain and sell' in the granting clause of the deed by which title to real estate is conveyed." *Webster Oil Co.*,

8

878 S.W.2d at 894; *see also* § 442.420.[8] Additionally, the Right of Way was described repeatedly in the 1901 deed as "a strip of land." "The language 'strip of land' is indicative of the conveyance of a fee simple absolute." *Homan v. Hutchison*, 817 S.W.2d 944, 949 (Mo. App. W.D. 1991).

We also find that the 1901 deed conveyed the Right of Way for valuable consideration without limitation upon the interest being transferred. "[T]o convey a fee simple title in land to a railroad, two elements must appear: first, the land must be conveyed for valuable consideration, and, second, no limitation on the quantum of the interest conveyed may appear in the deed by which title is transferred." *Nigro v. Ashley*, 690 S.W.2d 410, 417 (Mo. App. W.D. 1984); *see also Schuermann Enters., Inc. v. St. Louis Cnty.*, 436 S.W.2d 666, 668 (Mo. 1969).

First, the Wornall sons and Roma conveyed the Right of Way to the Railway "in consideration of the sum of [$3,250]," which constitutes valuable consideration. *See Nigro*, 690 S.W.2d at 417 (finding that each of the three deeds at issue "recite[d] valuable consideration" where the deeds conveyed parcels of land for the amounts of $320, $1,781.30, and $1,099.96). Second, the 1901 deed did not limit the quantum of the interest conveyed to the Railway. Rather, the deed conveyed to the Railway "a strip of land Fifty feet in width on each side of the Center line of the [Railway] as the same is or may be located over and across the" Wornall property, without limitation as to the use of the land or an expression of purpose for the conveyance. *Cf. State ex rel. State Highway Comm'n v. Griffith*, 114 S.W.2d 976, 980-81 (Mo. 1937) (where property was conveyed "[a]s and for a right of way for said railway," the railroad only received an easement, not the fee in the right of way).

---

[8] Section 442.420 provides that:

> The words "grant, bargain and sell," in all conveyances in which any estate of inheritance in fee simple is limited, shall, unless restrained by expressed terms contained in such conveyances, be construed to be the following expressed covenants on the part of the grantor, for himself and his heirs to the grantee, his heirs and assigns: . . . That the grantor was, at the time of the execution of such conveyance, seized of an indefeasible estate, in fee simple, in the real estate thereby granted[.]

Contrary to the Donovans' argument, neither the caption of the 1901 deed nor the deed's granting of a privilege to the Railway to cut and haul timber over land outside the Right of Way constitutes limitations on the interest conveyed in the deed. Although the 1901 deed was titled "Deed of Right of Ways," "[l]abeling a person's interest as a 'railroad right-of-way' does not mean the holder has but a mere easement." *Nigro*, 690 S.W.2d at 418. The term "'[r]ight of way' has been accorded two meanings in railroad parlance—the strip of land upon which the tract is laid— and the legal right to use such strip[.]" *Schuermann Enters.*, 436 S.W.2d at 669. "[A] number of different types of interests may result from a grant or conveyance of a railroad right-of-way." *Nigro*, 690 S.W.2d at 418. "[F]ee simple absolute [is] one interest possibly resulting from a grant or conveyance of a railroad right-of-way." *Id.* As described above, there are numerous indications in the 1901 deed that the property conveyed was a fee simple interest. Thus, we do not find the 1901 deed's caption as indicative of conveyance of a mere easement.

Furthermore, the 1901 deed's granting of an additional privilege to the Railway relating to cutting and hauling timber outside the Right of Way did not in any way limit the interest conveyed.[9] The Missouri Supreme Court interpreted a similar deed provision in *Clevenger v. Chicago, Milwaukee and St. Paul Railway Company*, and did not find the granting of a privilege to enter other land acted as any kind of limit on the fee simple interest conveyed. 210 S.W. 867, 867-68 (Mo. 1919). In that case, the deed conveyed to a railway "a strip of land fifty (50) feet wide on each side of the center line of the railway of said company as now located and established, together with necessary width for excavations, embankments, depositing waste earth and borrowing pits, as follows: One hundred feet (100) on each side of said strip of said railway[.]" *Id.* at 867. The

---

[9] The 1901 deed provided that "the privilege of cutting trees outside said strip liable to endanger the railroad tracks by falling, and the privilege of hauling materials when necessary over the other parts of said land in such ways as not to injure it is hereby granted."

10

Missouri Supreme Court held that "[b]eyond all doubt, the language of the deed vested a fee in the [railway] in and to 50 feet on each side of its railroad track, starting at the center" and "an easement only in the 100 feet on either side of the right of way conveyed in fee." *Id*. at 868. Thus, like in *Clevenger*, the language in the 1901 deed granting the Railway "the privilege of cutting trees outside of said strip" did not express a limit on the interest conveyed in the Right of Way.

Finally, we find that, contrary to the Donovans' argument, the 1898 deed supports that the interest conveyed to the Railway through the 1901 deed was not merely an easement. The 1898 deed, in which the Wornall sons conveyed the Wornall property to Roma in fee simple, excepted "the right of way of the Kansas City and South Eastern Railway Company through said land *the title to which said right of way* is in dispute[.]" (emphasis added). "It is a primary rule that in the grant of an easement no title passes[.]" *Brown v. Weare*, 152 S.W.2d 649, 655 (Mo. 1941); *see also* Black's Law Dictionary (11th ed. 2019) (defining "title" as "the legal link between a person who owns property and *the property itself*" (emphasis added)). Thus, that the 1898 deed referenced "the title to" the Right of Way supports that the 1901 deed conveyed not merely an easement in the Right of Way, but rather a fee simple interest in the property.[10]

Because we find that the 1901 deed conveyed to the Railway a fee simple interest in the Right of Way, Point I is denied.

*Point II – Section 516.090 bars the Donovans' adverse possession claim*

In Point II, the Donovans assert that the trial court erred in finding their claim of adverse possession is barred by section 516.090. We disagree.

---

[10] Similarly, we find that language in the 1909 deed supports our conclusion that the 1901 deed conveyed a fee simple interest in the Right of Way—not merely an easement—to the Railway. In the 1909 deed, Roma conveyed her fee simple interest in the Wornall property to the J.C. Nichols Land Company, specifically "except[ing] the right of way of the [Railway] through said land." The exception of the Right of Way in the 1909 deed is consistent with Roma being unable to convey that which she does not have: a fee simple interest in the Right of Way.

11

Although claims seeking to establish title to real property by adverse possession are generally subject to a ten-year statute of limitations, *see* § 516.010, the Missouri legislature has carved out an exception for adverse possession claims involving public land. Section 516.090 provides that "[n]othing contained in any statute of limitation shall extend to any lands given, granted, sequestered, or appropriated to any public, pious, or charitable use, or to any lands belonging to the state." By its operation, section 516.090 prohibits the taking of public land by adverse possession. *See Basye v. Fayette R-III Sch. Dist. Bd. of Educ.*, 150 S.W.3d 111, 116 (Mo. App. W.D. 2004) (Section 516.090 "precludes natural or corporate persons from claiming public lands on the basis of adverse possession."); *Rice v. Huff*, 22 S.W.3d 774, 781 (Mo. App. W.D. 2000) ("The statute of limitations applicable to adverse possession claims does not apply to public lands, and, therefore, title to public property cannot be claimed on the basis of adverse possession.").

The trial court found that section 516.090 barred the Donovans' counterclaim of adverse possession because "the property at issue is public land." We agree that section 516.090 operates to bar the Donovans' adverse possession counterclaim, as the Right of Way was land "given, granted, sequestered, or appropriated to [a] public . . . use." *See* § 516.090; *see also Cochran v. Wilson*, 229 S.W. 1050, 1055 (Mo. 1921) (a passageway owned by the board of education that adjoined a high school building and was used by the public in passing from one street to another was devoted to a public use under the predecessor statute of section 516.090).[11]

---

[11] "Whether a particular use is a public use is a public policy inquiry and is highly dependent on the specific facts and circumstances of each particular case." *City of Smithville v. St. Luke's Northland Hosp. Corp.*, 972 S.W.2d 416, 420 (Mo. App. W.D. 1998) (analyzing definition of "public use" in condemnation cases). "The definition of public use is flexible in nature and there has been a historical tendency to expand the types of activities which the courts consider to be public uses." *Id.* "Under Missouri condemnation law, public use means public benefit," and "it is not necessary that the whole community or any large part of it should actually use or be benefited by the proposed use." *Id.* at 420-21 (internal marks omitted).

In arguing that section 516.090 does not apply, the Donovans do not contend that the use of the Right of Way as a trail for walkers, runners and bicyclists is anything other than a public use. Rather, the Donovans argue that the KCATA "cannot claim the public use exception to the 10-year statute of limitation set out in RSMo Section 516.090" because the Right of Way "was not put to a public use between 1981 and 1997."[12]

But nothing in section 516.090 requires that the land be put to actual and uninterrupted public use for the statute's protection to apply: the statute only requires that the land be "given, granted, sequestered, or appropriated to any public, pious, or charitable use." Thus, land that is acquired for public use—even if not actually or continuously put to public use—is still protected by section 516.090 from claims of adverse possession. *See City of St. Louis v. Mo. Pac. Ry. Co.*, 21 S.W. 202, 206 (Mo. 1893) (property held by the city for public use as a highway was not acquired by adverse possession, notwithstanding that the property had "not been graded, paved, or otherwise improved by the city": "[t]he time when such improvements shall be begun rests in the discretion of the municipal authorities, and the circumstance that they have not seen fit yet to exercise that discretion does not impair the city's standing as owner"); *City of Poplar Bluff v. Knox*, 410 S.W.2d 100, 103 (Mo. App. 1966) (the "failure of a city to physically open and improve a dedicated street to make its actual use possible" did not bar application of section 516.090); *see also City of Gainesville v. Gilliland*, 718 S.W.2d 553, 564-65 (Mo. App. S.D. 1986) (rejecting argument that section 516.090 did not apply because the land had never been subjected to a public use).

The Donovans cite no legal authority to support their assertion that property devoted to a public use must be actually and continuously used as such for section 516.090 to apply, and—as

---

[12] The Donovans do not dispute that the KCATA has put the Right of Way to a public use since 1997.

13

described above—the law does not support their argument. We find no error in the trial court's ruling that section 516.090 bars the Donovans' counterclaim of adverse possession. Point II is denied.

*Points III and IV were not properly preserved*

In addition to asserting that they acquired an ownership interest in the property by adverse possession, the Donovans have also asserted that the KCATA's claims for declaratory judgment, quiet title, and ejectment are barred by laches and equitable estoppel. The trial court disagreed and found these affirmative defenses inapplicable to the KCATA's claims. In Points III and IV, the Donovans argue the trial court erred in so finding. Specifically, the Donovans argue in Point III that the "trial court erred in finding that the counterclaim[13] of laches and waiver does not apply to the KCATA because it erroneously applied the law in that laches does apply to entities such as the KCATA."[14] In Point IV, the Donovans argue that the "trial court erred in finding that the affirmative defenses raised by the Donovans do not apply to the issues in this case because it erroneously applied the law in that estoppel does apply to entities such as the KCATA."

We find that Points Relied On III and IV fail to comply with Rule 84.04(d), and thus were not properly preserved. Rule 84.04(d)(1) provides that a point relied on shall "[i]dentify the trial court ruling or action that the appellant challenges," "[s]tate concisely the legal reasons for the

---

[13] Although the trial court referred to laches and waiver as counterclaims, they are affirmative defenses, *see* Rule 55.08, and were pleaded as such by the Donovans.

[14] Although the Donovans assert in this point relied on that the trial court erred in finding waiver inapplicable, they do not develop this argument in their brief, and therefore it is deemed abandoned. *See Regions Bank v. Davis*, 521 S.W.3d 283, 286 n.4 (Mo. App. S.D. 2017) ("When a party fails to develop a point relied on in the argument section, it is deemed abandoned."). Further—and perhaps more critical—the Donovans did not seek summary judgment on the affirmative defense of waiver. *See Lane v. Non-Teacher Sch. Empl. Ret. Sys. of Mo.*, 174 S.W.3d 626, 633 (Mo. App. W.D. 2005) (a party seeking summary judgment by establishing an affirmative defense must show "there is no genuine dispute as to the existence of each of the facts necessary to support" the movant's affirmative defense and the movant is entitled to judgment as a matter of law). Because the Donovans failed to raise this issue before the trial court, we cannot review their claim regarding waiver on appeal. *See McLeese v. J.C. Nichols Co.*, 842 S.W.2d 115, 120 (Mo. App. W.D. 1992) ("An appellate court may not address issues not raised before the trial court.").

appellant's claim of reversible error," and "[e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." To comply with this rule, the point must state why the action or ruling of the trial court was erroneous. *State v. Nunley*, 341 S.W.3d 611, 625 (Mo. banc 2011). Thus, "[m]erely stating what errors are, without also stating why they are errors, neither complies with the rule nor preserves anything for review." *Kyle Estate v. 21st Mortg. Corp.*, 515 S.W.3d 248, 253 (Mo. App. S.D. 2017).

In Points Relied On III and IV, the Donovans merely set forth trial court findings they contend are erroneous without stating why they are errors. In both points relied on, they assert that the trial court made faulty conclusions of law in finding the affirmative defenses do not apply in that the affirmative defenses do apply. These circular assertions fail to explain the bases for the Donovans' claims of error. Because these points relied on do not explain how the trial court erred in the context of the Donovans' case, they do not comply with Rule 84.04(d)(1). *See Big Valley, Inc. v. First Nat'l Bank*, 624 S.W.2d 193, 194 (Mo. App. S.D. 1981) (point relied on—which claimed the trial court erred in making a faulty conclusion of law that the defendant bank had make a proper accounting—violated Rule 84.04(d)(1) because it did not explain how the trial court erred in the context of the case).[15]

"A deficient point relied on that cannot be understood without resorting to the argument portion of the brief or record fails to preserve the argument for appellate review." *Prather v. City of Carl Junction, Mo.*, 345 S.W.3d 261, 265 (Mo. App. S.D. 2011); *see also Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. W.D. 2018) ("Points that do not comply with the dictates of Rule 84.04(d) preserve nothing for our review and constitute grounds to dismiss."). "Whether to dismiss

---

[15] We also note that the Donovans' brief does not comply with the requirement of Rule 84.04(e) that "[f]or each claim of error, the argument shall also include a concise statement describing whether the error was preserved for appellate review" and if so, "how it was preserved."

an appeal for briefing deficiencies is discretionary" and "[w]e will occasionally review non-compliant briefs *ex gratia*." *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 396 (Mo. App. W.D. 2015). We exercise our discretion to review the merits of Points III and IV *ex gratia. See id.*

*Point III – The Donovans cannot acquire title to the property by operation of laches*

As described above, the trial court found that—for the same reason they could not acquire title by adverse possession—the Donovans could not acquire title to the property at issue by virtue of laches. We agree.

To successfully invoke the affirmative defense of laches, the defendant must demonstrate that the plaintiff knew of the facts giving rise to his rights and delayed assertion of his rights for an excessive amount of time, and that the defendant suffered legal determinant as a result.[16] *Royalty v. Royalty*, 264 S.W.3d 679, 687 (Mo. App. W.D. 2008). "The doctrine of laches is the equitable counterpart of the statute of limitations defense." *Empiregas, Inc. of Palmyra v. Zinn*, 833 S.W.2d 449, 451 (Mo. App. E.D. 1992). "Its purpose is to avoid unfairness which can result from the prosecution of stale claims." *Id.*

Individuals—such as the Donovans—may not acquire title to public land by operation of laches.[17] To hold otherwise would allow an individual or private entity to acquire title to public

---

[16] "An 'affirmative defense' is defined as a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true." *Allen v. Titan Propane, LLC*, 484 S.W.3d 902, 905 (Mo. App. S.D. 2016) (internal marks and emphasis omitted). Thus, in raising laches as an affirmative defense, the Donovans assert that even if the KCATA is the fee simple owner of the property at issue, its delay in asserting its right to the property enclosed by the Donovans' fence will defeat its claim to the property.

[17] Although our research uncovered no Missouri case expressly holding that an individual or private entity cannot assert laches against a public entity to acquire title to public land, Missouri case law supports this conclusion. *See State ex rel. Hines v. Cape Girardeau & Jackson Gravel Road Co.*, 105 S.W. 761, 767 (Mo. 1907) ("any laches of the county authorities did not operate to divest the public of its right to use and travel over this road as a free public highway"); *Dunklin Cnty. v. Chouteau*, 25 S.W. 553, 557 (Mo. 1894) (noting that although laches may apply to a county or municipal corporation, "[d]istinction must also be made between property held for strictly public purposes, as for streets, parks, commons, and the like, and property held by the corporation in its private character"); *State ex rel. City of Monett v. Lawrence Cnty.*, 407 S.W.3d 635, 639 (Mo. App. S.D. 2013) (noting that "estoppel and laches rarely lie against governmental bodies" because of "the principle that public rights generally should not yield to those of private parties," and that such concerns are not present in a "dispute *between* public bodies." (emphasis in original)).

16

land as a result of the public landowner's inaction or neglect. This would be in direct contravention of section 516.090, "the purpose of [which] is to protect against the loss of public lands due to the carelessness or oversight of the people charged with protecting the public's interests." *Basye*, 150 S.W.3d at 116. The Donovans cannot accomplish through the equitable doctrine of laches that which is prohibited by statute. *See Mullins v. Kan. City*, 188 S.W. 193, 197 (Mo. 1916) (noting that although the doctrine of laches may apply to a county or other municipal corporation, "it is plain that to allow such a doctrine upon a contemporaneous matter to be successfully asserted in the teeth of a statute which forbids, and of which statute plaintiff must be held to know, would be against public policy");[18] *see also Metro. St. Louis Sewer Dist. v. Zykan*, 495 S.W.2d 643, 657 (Mo. 1973) ("Laches cannot be invoked to defeat justice.").

Allowing the Donovans to acquire title to the property at issue by laches "would defeat the very object and design of the Legislature" in enacting section 516.090. *See Mullins*, 188 S.W. at 197. Accordingly, the trial court did not err in finding that laches was inapplicable here. Point III is denied.

*Point IV – The Donovans cannot acquire title to the property by operation of estoppel*

Similarly, the trial court did not err in finding that the affirmative defense of estoppel was inapplicable "to the issues in this case."

---

The Donovans cite to *State ex rel. City of Monett v. Lawrence County*, among other cases, for the principle that laches may be asserted against a governmental body. However, neither *Lawrence County*, nor any other case cited by the Donovans, involved a private party's assertion of laches against a governmental body in an attempt by the private party to acquire title to public land.

[18] In *Mullins*, the plaintiff asserted that he entered into an oral contract with the city and that the city was estopped from denying the validity of the oral contract. 188 S.W. at 196. The court refused to allow the plaintiff to invoke the doctrine of estoppel against the city because there was a statute in effect at the time which provided that all city contracts must be in writing. *Id.* at 195-97. The court held that, to allow otherwise and permit the plaintiff to bind the city to an oral contract, "would defeat the very object and design of the Legislature in enacting said statute." *Id.* at 197.

"The equitable defenses of estoppel and laches are closely related." *Shores v. Express Lending Servs., Inc.*, 998 S.W.2d 122, 127 (Mo. App. E.D. 1999) (noting "[b]oth are unfavored theories"). Much like laches, "[e]quitable estoppel arises from the unfairness of allowing a party to belatedly assert known rights on which the other party has, in good faith, relied thereby and become disadvantaged." *See id.* Thus, for the same reasons as described above involving laches, we find that the Donovans cannot acquire title to public property by operation of equitable estoppel. Again, to hold otherwise would allow the Donovans to accomplish that which is prohibited by section 516.090. *See Mullins*, 188 S.W. at 197 (noting that a statute which could be effectively disregarded on estoppel grounds would serve no purpose).

The Donovans also argue in Point IV that the KCATA should be judicially estopped from claiming a fee simple interest in the Right of Way, contending that in a previous proceeding the KCATA took the inconsistent position that it only held an easement in the entirety of the trail property.[19] The Donovans have failed to preserve this claim. Although the Donovans raise this issue in the body of their brief under Point IV, their Point Relied On is wholly devoid of any reference to the doctrine of judicial estoppel, and instead asserts that the "affirmative defense"[20] of "estoppel" is applicable to entities such as the KCATA. Thus, this Point Relied On fails to: assert that the trial court erred in refusing to invoke the doctrine of judicial estoppel, state the legal

---

[19] Judicial estoppel is an equitable, discretionary doctrine intended to protect "the dignity of the courts" by prohibiting a party from asserting inconsistent factual positions in different legal proceedings. *Vacca v. Mo. Dep't of Labor & Indus. Relations*, 575 S.W.3d 223, 231-32 (Mo. banc 2019). Although a court may consider various factors in determining whether to permit invocation of judicial estoppel, "the only fixed requirement for application of the doctrine is that the party against whom judicial estoppel is invoked must have taken inconsistent positions in two proceedings." *Id.* at 234-35.

[20] The Missouri Supreme Court has recently noted that the doctrine of judicial estoppel operates differently than an affirmative defense in that it does not set out "additional facts that defeat the claim of the pleader," but rather "is in the nature of a sanction for misuse of the courts." *Vacca*, 575 S.W.3d at 229 n.4. Consistent with this characterization of the doctrine, the Donovans did not raise "judicial estoppel" as an affirmative defense in their answers.

reasons for any such claim of error, and explain why such legal reasons would support a claim of error. *See* Rule 84.04(d)(1).

"The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts," but rather "is rooted in sound policy." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978) (describing the various objectives served by Rule 84.04(d)); *see also Nickel*, 480 S.W.3d at 396 ("Deficient points relied on force the appellate court to search the argument portion of the brief or the record itself to determine and clarify the appellant's assertions, thereby wasting judicial resources, and, worse yet, creating the danger that the appellate court will interpret the appellant's contention differently than the appellant intended or his opponent understood."). Because Point Relied On IV makes no assertion of error relating to the trial court's failure to invoke the doctrine of judicial estoppel, we decline to address this claim on appeal. *See Nickel*, 480 S.W.3d at 396 (appellate court has discretion whether to review merits of an unpreserved claim on appeal).

Point IV is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

19